Dennis A. WILSON and Mary
G. Wilson, Appellees,

v.

Steven C. VANDEN BERG and
Torgerson & Vanden Berg
Law Offices, Appellants.

No. 02–2089.

Supreme Court of Iowa.

Oct. 6, 2004.

Chester C. Woodburn III of Hansen, McClintock & Riley, Des Moines, for appellants.

Dennis A. Wilson and Mary G. Wilson, Mason City, *pro se*.

TERNUS, Justice.

The appellees, Dennis and Mary Wilson, were dissatisfied with legal services rendered by the appellant, Steven C. Vanden Berg, in connection with the Wilsons' purchase of a residence in Mason City, Iowa. The Wilsons successfully sued Vanden Berg and his firm, Torgerson & Vanden Berg Law Offices, for breach of contract and fraud. On appeal to the district court, the magistrate's award of compensatory and punitive damages was affirmed. This court granted discretionary review, and we now affirm the judgment against Vanden Berg and his law firm.[1]

---

1. The defendants do not offer any basis for reversal of the judgment entered against Torgerson & Vanden Berg Law Offices other than the alleged errors that purportedly require reversal of the judgment as to Steven Vanden Berg. Therefore, for the sake of simplicity, we refer in our opinion only to the defendant, Steven Vanden Berg. Nonetheless,

## I. *Background Facts and Proceedings.*

Viewed in a light most favorable to the plaintiffs, *see Poole v. Hawkeye Area Cmty. Action Program, Inc.*, 666 N.W.2d 560, 565 (Iowa 2003), the record shows the following facts. In March 2001 the Wilsons, residents of Wisconsin, purchased a house in Mason City through a Mason City real estate agent, after having viewed the home and its features on the Internet website of a local newspaper. They were interested in this particular house due to the advertised lot size—200' by 142'. When the Wilsons later discovered the house they had purchased sat on a 100' by 142' lot, they sought legal advice.

The Wilsons met with Vanden Berg, a Mason City lawyer, on June 14, 2001, for a free initial consultation. After explaining the nature of their problem, they informed Vanden Berg that the smaller lot size hindered their plan to put an addition onto their home, which was needed before Mary's elderly parents, the Hengfusses, could move to Iowa to live with them. The Wilsons were also concerned about using a local attorney in a matter that might require suit against a local realtor. After Vanden Berg assured them he had no conflict of interest based on any relationship with the selling agent, Scott Huff, the Wilsons signed an attorney fee contract and paid Vanden Berg a $500 retainer.

On June 26, 2001, in response to a request from Vanden Berg, the Wilsons provided the defendant with copies of several documents pertinent to the real estate dispute. Over the next several months Vanden Berg repeatedly misplaced the necessary documents, causing the Wilsons to provide him with the same set of papers on five separate occasions.

Mary Wilson wrote to Vanden Berg on August 24, 2001, to find out what action Vanden Berg had taken on the matter. She informed him they wanted to move forward quickly so they could proceed with their plan to move Mary's parents to Iowa. Vanden Berg replied on October 2, 2001, stating he had recently left a message for Huff to call Vanden Berg and that he had talked to Huff previously so Huff had had time to consider Vanden Berg's *"possible* representation in this matter." (Emphasis added.) He also advised the Wilsons for the first time that if the Hengfusses were on the title to the house, they would also need to be his clients. Again he claimed not to have received the necessary documents and asked that they be provided as soon as possible "so that *whoever handles your case* could make a demand to [Huff's] insurance company on short notice." (Emphasis added.)

On November 8, 2001, the Wilsons and Hengfusses met with Vanden Berg so the Hengfusses could sign the same attorney fee contract previously executed by the Wilsons. This meeting fueled the Wilsons' concern about Vanden Berg's resolve to advocate their position. In particular, they were troubled by Vanden Berg's comment that "people don't sue in this town." Further alarm was generated when Vanden Berg called Huff in their presence and, without identifying himself, began his conversation with Huff by stating, "Hey buddy, what's up?"

Due to continued inaction by Vanden Berg and growing concerns about Vanden Berg's ability to represent them effectively, the Wilsons decided to hire a new attorney. Before they could do so, however, on January 7, 2002, Vanden Berg wrote to the Wilsons, terminating his representation of

our decision and disposition of this case is equally applicable to Torgerson & Vanden

Berg Law Offices.

them. He stated the Wilsons may have a claim against Huff, but they would have to obtain other counsel because the apparent need to bring a lawsuit would result in "potential conflicts with realtors in the area" with whom Vanden Berg worked. Vanden Berg enclosed a bill for services rendered and a refund check in the amount of $80.00. The bill was dated January 9, 2002; it included charges totaling $510 and showed an unexplained "client credit" of $90.

The Wilsons were appalled at Vanden Berg's billing statement and wrote to him on January 11, 2002, expressing their disagreement. They were particularly upset at the charges attributable to Vanden Berg's repeated phone calls to obtain copies of the paperwork in view of the fact these calls were necessitated by his inability to keep track of the documents in his office. The Wilsons questioned the accuracy of the bill in other respects and stated they thought the only legitimate charges totaled $85. Given the prior refund of $80, they demanded an additional refund of $335.

Receiving no response, the Wilsons filed the present small claims action on April 23, 2002. They sought damages in the amount of $4000 for "misrepresentation, conflict of interest, broke our attorney-client privilege and took our money, did nothing and billed us with false charges." In response, on May 29, 2002, Vanden Berg sent a "corrected" bill, dated February 4, 2002, with the explanation that his staff had mistakenly used an hourly rate of $85 rather than $90 on the prior bill. Vanden Berg offered to "credit" the difference of $30 if the Wilsons would accept the prior check for $80 and an additional $75 enclosed with the May 2002 letter and dismiss their lawsuit. In a subsequent letter, Vanden Berg informed the Wilsons that the bank account upon which the $80

check had been issued was now closed, so that check could not be cashed.

The Wilsons did not accept Vanden Berg's offer, and the matter proceeded to trial before a magistrate on August 23, 2002. The magistrate rejected Vanden Berg's pretrial motion to dismiss based on the Wilsons' lack of an expert witness. In addition to reciting the facts previously reviewed, Mary Wilson told the magistrate that on July 25, 2002, Vanden Berg told the Wilsons that he had talked to the judge hearing their case and the judge agreed the Wilsons had no chance of winning and should settle. Vanden Berg disputed such a conversation with the plaintiffs.

In a ruling dated September 4, 2002, the magistrate first stated unequivocally that she had not talked with Vanden Berg prior to the trial concerning the merits of the Wilsons' case. She then made findings of fact consistent with those set out above. She found several billing entries suspicious, including a $51 charge for the "free" initial consultation, charges for phone calls to locate the paperwork, and an entry relating to a call to the sheriff's department, which even Vanden Berg struggled to relate to the Wilsons' case. In addition, the magistrate questioned a charge for preparation of a document for a client conference; the Wilsons did not receive any documents and there was not a client conference until a month later. Similarly, the magistrate found odd Vanden Berg's "credit" to the Wilsons, noting the work allegedly done and not billed was unidentified and undocumented.

With respect to the breach-of-contract claim, the magistrate found that the Wilsons were prepared to litigate their dispute and there was nothing in the parties' contract that limited Vanden Berg's representation to negotiations only. The magistrate concluded that once Vanden Berg

realized that a lawsuit would have to be filed, he ended his services due to a conflict of interest. She also concluded Vanden Berg must have known when he agreed to represent the Wilsons that his relationship with Scott Huff would prevent him from advocating for the Wilsons as fully as necessary. Based on this "transgression," together with Vanden Berg's "inaccurate and suspicious billings," the magistrate held Vanden Berg had breached his contract with the Wilsons.

The magistrate also found fraudulent misrepresentation by Vanden Berg based on his assurances to the Wilsons that he had no conflict of interest that would prevent him from representing their interests. She noted there was no evidence that anything occurred after Vanden Berg undertook the Wilsons' case that gave rise to his later conflict. She concluded "[h]e took the Wilsons' case and their money hoping that the matter would involve nothing more than negotiations with Mr. Huff's insurance carrier." As a result, the Wilsons' case was significantly delayed, and they paid a retainer for work of little or no value. Based on Vanden Berg's breach of contract and fraud, the court ordered Vanden Berg to make a full refund of the $500 retainer.

The magistrate also considered punitive damages. Finding Mary Wilson's testimony more credible than Vanden Berg's, she found Vanden Berg acted with reckless disregard when he entered into a contract with the Wilsons knowing he could not "represent them in an unencumbered and zealous manner." The magistrate awarded punitive damages of $3500.

Vanden Berg appealed the magistrate's ruling to the district court. *See* Iowa Code § 631.13(1) (2001). A district associate judge denied Vanden Berg's request to submit additional evidence, rejecting the defendant's contention that he had not been given an adequate opportunity to defend himself. *See id.* § 631.13(4)(*a*) (giving reviewing judge discretion to hear additional evidence). The judge then proceeded to decide the appeal on the record, which included the pertinent documents and a tape recording of the hearing before the magistrate.

In its subsequent ruling, the district court gave deference to the magistrate's findings of fact, particularly with respect to the credibility of the witnesses. In addition, the court specifically found the magistrate's determination that Vanden Berg was not credible was supported by the inconsistencies in his billing statements and the nature and content of Vanden Berg's testimony. In particular, the court noted Vanden Berg failed to provide an adequate explanation as to why he was unaware of a potential conflict of interest at the time he accepted the Wilsons' retainer; he made unconvincing denials of the allegations that he lost the plaintiffs' paperwork; and he could not explain why he billed for conversations with the sheriff. The court concluded the defendant "accepted money under false pretenses ... and billed [the plaintiffs] for services he did not perform." He affirmed the magistrate's award of compensatory damages of $500. In addition, the district court found that punitive damages were warranted.

We granted Vanden Berg's petition for discretionary review. *See* Iowa Code § 631.16. He raises, in general, the following issues: (1) the district court abused its discretion in refusing to allow additional evidence; (2) the district court failed to conduct a de novo review; (3) there was not substantial evidence to support the finding that Vanden Berg breached his contract with the Wilsons; (4) there was not substantial evidence to establish fraud; and (5) there was insufficient evidence to

support an award of punitive damages. We consider each issue in turn.

## II. *Presentation of Additional Evidence.*

■ A judge hearing an appeal of a small claims action has discretion to "order that additional evidence be presented relative to one or more issues." Iowa Code § 631.13(4)(*a*). Vanden Berg claims the district court abused its discretion to permit additional evidence because such evidence was necessary to protect Vanden Berg's rights and to provide an adequate record for rendering judgment on appeal. He specifically asserts the small claims petition did not adequately apprise him that the Wilsons' claim involved anything more than a dispute over his fees.[2]

The district associate judge rejected Vanden Berg's arguments, and we find no abuse of discretion in his doing so. In their petition, the Wilsons sought $4000 in damages, an amount far in excess of the $335 paid to Vanden Berg for his services. Moreover, this damage claim was expressly based not only on Vanden Berg's alleged false billing, but also on his "misrepresentation" and "conflict of interest." In addition to the petition, Mary Wilson's testimony at trial extensively addressed Vanden Berg's false representation that he had no conflict in suing a local realtor. Furthermore, she specifically requested punitive damages.

Given the allegations of the plaintiffs' petition and the Wilsons' testimony at trial, we understand why the district court concluded Vanden Berg had adequate notice of the claims asserted against him and an adequate opportunity to litigate those claims at the hearing before the magistrate. The conclusion that the defendant had notice of and an opportunity to defend against the plaintiffs' claims provides a reasonable basis for the court's refusal to permit Vanden Berg to offer additional evidence. Therefore, we find no abuse of discretion. *See Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 160 (Iowa 2004) ("An abuse of discretion occurs when the court's decision is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree."). The court properly refused to consider the additional evidence the defendant sought to introduce.

## III. *De Novo Review.*

■ Vanden Berg also complains that the district associate judge did not conduct a "de novo hearing" as required by Iowa law. We note initially that a party appealing a small claims ruling is not entitled to another trial. As section 631.13(4) clearly provides, "[t]he appeal shall be promptly heard *upon the record thus filed without further evidence.*" Iowa Code § 631.13(4)(*a*) (emphasis added). To the extent the defendant is contending that he had a statutory right to be heard *orally* on his appeal of the initial ruling, we reject that contention. *Cf. Hyde v. Anania*, 578 N.W.2d 647, 650–51 (Iowa 1998) (holding

---

2. Although the defendant asserts the magistrate narrowed the issues when ruling on his motion to dismiss, we think the most that can be said of that decision is that the magistrate stated she would not consider any claim in the nature of legal malpractice that would require expert testimony. In fact, the defendant himself limited his motion to dismiss to legal malpractice claims other than those that "would be ... obvious to a nonlegally trained person." As we discuss later in this opinion, the Wilsons' claims alleging misrepresentation and false billing do not require an expert witness. Expectations that one will not be induced into entering a contract by intentional and knowing misrepresentations and then falsely billed for performance of the contract are expectations in any contractual association and are not peculiar to an attorney-client relationship.

no procedural due process violation where clerk's failure to notify defendant of small claims court's ruling deprived defendant of opportunity to appeal ruling to district court; initial hearing in small claims court gave defendant "all the due process to which he was entitled"). In its ruling denying Vanden Berg's application to submit additional evidence, the district court stated the parties would have twenty days from the date of its order to submit written briefs. Thus, Vanden Berg had the opportunity to be heard on his appeal.

■ As noted, the defendant also asserts the district court's review was not de novo. *See Witcraft v. Sundstrand Health & Disability Group Benefit Plan,* 420 N.W.2d 785, 787 (Iowa 1988) ("In an appeal from a small claims action, the district court conducts a de novo review on the record before the magistrate."). In considering this contention, it is important to keep in mind that neither the magistrate nor the district court was required to issue findings of fact and conclusions of law in this small claims action. *See Jack Moritz Co. Mgmt. v. Walker,* 429 N.W.2d 127, 128 (Iowa 1988). The reviewing court need only "briefly state its reasons for reaching [its] decision." *Id.*

■ Viewed from this perspective, we think the district court's occasional references to the magistrate's findings and conclusions being supported by the evidence or being consistent with the law were merely the court's way of stating that it had reached its decision for the same reasons that prompted the magistrate to rule

in favor of the plaintiffs. Our interpretation of the district court's decision is supported by other statements made by the court in its ruling that indicate the court understood the nature of its review. For example, the reviewing court began its discussion of the issues by noting that the magistrate's findings of fact were only entitled to "some deference." Later the court made several express factual findings and legal conclusions without any reference to or reliance upon the magistrate's findings and conclusions. For example, the court stated, "Vanden Berg accepted money under false pretenses, performed no valuable services, lost paperwork and billed plaintiffs for services he did not perform." The court also stated, "[T]he Court finds that punitive damages in this matter are merited." We are satisfied from our review of the entire ruling that the district court undertook its own analysis and evaluation of the evidence and heard the matter de novo.

## IV. *Breach of Contract.*

Vanden Berg claims there is not substantial evidence that he breached his contract with the Wilsons. In particular, he asserts that in the absence of expert testimony, there is no proof he "breached any legal standard of representation or that his actions were below the minimum standard of the bar."[3] Finally, he claims the court awarded more damages than the amount requested by the plaintiffs. We review the district court's ruling for the correction of errors of law. *See Conkey v. Hoak Mo-*

---

3. Vanden Berg also argues there is no evidence he "did anything less than the best he could do." This contention is apparently directed to the magistrate's discussion of Vanden Berg's lack of compliance with the parties' contract, which provided: "I will do the best I can for you within the budget constraints you describe." The magistrate concluded it was "unthinkable that this could be

Mr. Vanden Berg's best effort in representing a client." The focus of our review, however, is on the district court's decision, not the magistrate's ruling. The district court did not discuss the best-efforts issue, but rather focused on the defendant's representation that he could handle the Wilsons' case unencumbered by a conflict of interest and the defendant's bill, matters we will discuss.

*tors, Inc.*, 637 N.W.2d 170, 172 (Iowa 2001).

■ We initially address Vanden Berg's claim that an expert witness was required because only another lawyer would be qualified to comment on the propriety of his conduct. The gist of the Wilsons' claim was that the defendant lied to them about having no conflict of interest with realtor Huff and then submitted a false bill to justify keeping the retainer they had paid. This claim is of a type that can readily be resolved by a fact finder without the assistance of an expert witness. *See Campbell v. Delbridge*, 670 N.W.2d 108, 112 (Iowa 2003) (rejecting need for expert testimony where claim against doctor and hospital was based on standards of care and professionalism understood and expected by laypersons). Therefore, the plaintiffs' failure to call an expert does not preclude recovery on their claims.

■ Before reviewing the evidence pertinent to the defendant's alleged breach of contract, we note preliminarily that "[a] party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). In reviewing the record in this case, we think there is substantial evidence to support a finding the defendant breached his contract with the plaintiffs in two ways: billing for services he did not perform and rendering services when he was burdened with a conflict of interest.

In the parties' written contract, the Wilsons agreed to pay Vanden Berg his hourly rate "for all services *performed.*" (Emphasis added.) The district court found the defendant billed the Wilsons for services that he did not perform or that were not for their benefit. There is substantial evidence to support this finding. Mary

Wilson testified that she provided Vanden Berg with no less than five copies of the documents he needed to pursue their case, yet the defendant billed the Wilsons for phone calls and correspondence related to obtaining multiple copies despite his own responsibility for these duplicate efforts. Another example is the charge for a call to the sheriff's office; the record contains no plausible explanation for how the sheriff was involved in this real estate problem. The bill also included entries for research and preparation of documents that were unexplained and for which there was no documentary evidence of performance.

We also conclude there is substantial evidence the defendant could not and did not represent the Wilsons unburdened by a conflict of interest, despite his promise that he could do so. Even though the plaintiffs wanted to move the matter along quickly, Vanden Berg took very little action on their case, and the few efforts he made were directed to locating insurance to cover Huff's liability to the Wilsons. An obvious explanation for Vanden Berg's conduct was his self-interest in not jeopardizing his relationship with Huff and other local realtors by pressing too hard on behalf of the plaintiffs.

In summary, we conclude there is substantial evidence to support the district court's ruling the defendant breached his contract with the plaintiffs. We do not address the defendant's contention the district court awarded excessive damages on the contract claim because we conclude the judgment can be sustained on the basis of the plaintiffs' fraud claim, which we now consider.

V. *Fraud.*

The Wilsons alleged Vanden Berg misrepresented at their initial meeting that he had no conflict with the realtor whom the

584

Wilsons believed had misled them with respect to the size of the lot. The plaintiffs asserted they would not have hired Vanden Berg had they known he would be unwilling to vigorously assert their claim and see their case through to the end, including a lawsuit against the realtor if necessary. The Wilsons contended at trial that the delay in resolving their dispute with the realtor caused a concomitant delay in moving Mary's parents to Iowa, resulting in a monthly expense of $700 to rent an apartment for the Hengfusses in Wisconsin. The district court found that Vanden Berg had accepted a retainer under "false pretenses" and affirmed the award of $500 in compensatory damages.

The defendant contends on appeal to this court that the district court did not address the fraud claim in its ruling. Vanden Berg dismisses the court's finding that the defendant had taken the retainer under false pretenses, arguing this reference to a criminal act "has no appropriate place" in the district court's review. While it is true that the term "false pretenses" is generally considered to refer to a crime, we think the district court used this term to refer to the misrepresentation claim alleged by the plaintiffs.

The common meaning of "false pretenses" is "[t]he crime of knowingly obtaining title to another's personal property by misrepresenting a fact with the intent to defraud." *Black's Law Dictionary* 636 (8th ed.2004). Thus, the concept of false pretenses mirrors the elements of a claim for fraudulent misrepresentation, which requires proof of a material misrepresentation made with knowledge of its falsity and an intent to deceive, together with the plaintiff's justifiable reliance and resulting damages. *See Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001). While we do not endorse the use of the term "false pretenses" in referring to a

fraudulent misrepresentation claim, our objective here is to ascertain the intent of the court, not the precision of its terminology. We are confident the court ruled against the defendant on the Wilsons' misrepresentation claim when it held the defendant had obtained the retainer under false pretenses.

Vanden Berg alternatively contends there was insufficient evidence on three elements of the fraudulent misrepresentation claim: (1) the falsity of the misrepresentation; (2) the defendant's knowledge of the falsity; and (3) the defendant's intent to deceive. Our discussion of this challenge focuses on the defendant's assurance he had no conflict of interest with Huff that would interfere with his representation of the Wilsons.

With respect to the falsity of this statement, Vanden Berg argues he had no conflict when he first met with the plaintiffs. He claims "the evidence shows the potential conflict did not develop until January 2002." Consequently, he argues, his assurance was true when made. Regardless of whether there was evidence in the record to support Vanden Berg's view of the situation, our task is to determine whether there is substantial evidence in support of the district court's contrary determination of what occurred. We think there is such evidence.

Mary Wilson testified Vanden Berg told them at their initial conference that "he knew of [Huff], did no business with him and there was definitely no conflict." She also testified that although the defendant denied a relationship with Huff, Vanden Berg made a phone call to Huff at the parties' November 2001 meeting where, without identifying himself, he greeted Huff with "Hey buddy, what's up?" Later, in early January 2002, Vanden Berg terminated his representation of the Wilsons "because of potential conflicts with

realtors in the area that I work with." Vanden Berg failed to give them any explanation for the sudden development of a "potential conflict" with local realtors. We think a fair inference from these facts is that Vanden Berg suffered from a conflict of interest from the beginning of the parties' relationship. We have not overlooked the defendant's testimony at trial that the conflict developed after his initial consultation with the Wilsons due to an increase in his real estate practice. This claim, supported only by Vanden Berg's testimony, was apparently rejected by the district associate judge, who relied on the magistrate's determination that the defendant was not credible.

■ The evidence we have already reviewed also supports a finding that Vanden Berg knew his assurances were false. No one better than the defendant himself would know whether he had a relationship with Huff that would create a conflict of interest sufficient to interfere with his advocacy of the Wilsons' claim. Moreover, his lackluster handling of the Wilsons' complaint against Huff further supports the conclusion he had a conflict from the beginning and he knew it.

■ The testimony and circumstances we have discussed and the inferences that can be drawn from this evidence also provide substantial support for a finding that Vanden Berg intended to deceive the Wilsons with respect to his relationship with Huff. In response to direct inquiries from the plaintiffs, Vanden Berg gave unequivocal assurances that he had no conflict. Later, his efforts were almost exclusively directed toward extracting a payment from Huff's insurance carrier. When those efforts were not fruitful and litigation appeared to be the only alternative, Vanden Berg terminated his representation of the plaintiffs, refunding only $80 of the $500 retainer. From these facts, one could infer that Vanden Berg intended to mislead the plaintiffs in the hope of representing them up to the point that litigation was required and earning $500 in the process.

In summary, we conclude there is substantial evidence to uphold the district court's ruling that Vanden Berg obtained the $500 retainer through misrepresentation. As the defendant does not challenge the propriety of the court's damage determination on this claim, we affirm the judgment of $500 in compensatory damages to the plaintiffs.

## VI. Punitive Damages.

The district court held "that punitive damages [were] merited" and affirmed the magistrate's award of $3500. On appeal to this court, the defendant argues the district court "rubber stamped the findings and conclusions of the magistrate" and failed to conduct a de novo review. He also contends the district court did not hold the plaintiffs to the correct standard of proof by a preponderance of clear, convincing, and satisfactory evidence, and failed to make any findings of the specific acts by the defendant that constituted willful and wanton disregard for the plaintiffs' rights. See Iowa Code § 668A.1 (requiring proof by a preponderance of clear, convincing, and satisfactory evidence that the defendant's conduct amounted to a willful and wanton disregard for the rights of another). As a final allegation of error, Vanden Berg argues there is insufficient evidence to support a finding of willful and wanton conduct.

■ We have already discussed the defendant's contention that the district court did not perform a de novo review, so we turn to Vanden Berg's assertion the court did not apply the proper standard of proof. The defendant has not directed our attention to anything said by the district court

in its ruling that indicates it applied a less rigorous burden of proof than that required under Iowa law. The court's failure to specifically state the applicable burden of proof is not a basis to conclude it applied the wrong standard. There is no requirement that the district court state every principle of law that governs its review in a small claims action. Therefore, in the absence of any suggestion in the record that the court used an erroneous burden of proof, we assume it properly applied the law. Therefore, there is no basis for reversal on this ground.

The defendant also complains of the district court's alleged omission of a factual finding of a specific act that was committed with a willful or reckless disregard for the rights of the plaintiffs. As we have previously discussed, however, there is no requirement that a court issue findings of fact in a small claims action so long as we can ascertain the basis for the court's ruling for purposes of our review. Here, the district court indicated its general agreement with the magistrate's findings and conclusions with respect to the issue of punitive damages. The magistrate stated in her ruling that Vanden Berg intentionally deceived the Wilsons and his conduct rose to a level meriting an award of punitive damages. We are comfortable that the district court, by its concurrence in the magistrate's findings, provided a discernible rationale for its award of punitive damages.

■■■ The remaining challenge to the punitive damage award is the defendant's belief there was insufficient evidence to support a finding that his conduct "constituted willful and wanton disregard for the rights" of the plaintiffs. Iowa Code § 668A.1. Conduct is "willful and wanton" when

"[t]he actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences."

*McClure v. Walgreen Co.*, 613 N.W.2d 225, 230 (Iowa 2000) (citation omitted).

■■■ The facts and circumstances we have previously reviewed in support of the court's ruling that Vanden Berg breached his contract with the Wilsons and made a material misrepresentation to them also supports the district court's finding of conduct sufficient to support the judgment for punitive damages. Although a breach of contract will ordinarily not support a punitive damage award, where the breach also constitutes an intentional tort committed maliciously, punitive damages may be given. *See Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 156 (Iowa 1993) (stating "we will uphold an award of punitive damages when conduct breaching a contract also constitutes an intentional tort, committed maliciously, that meets the standards of section 668A.1").

The evidence here supports a finding the defendant undertook to represent the plaintiffs after having assured them he could do so unencumbered by any conflicts of interest. The record also supports a finding Vanden Berg suffered from a conflict of interest from the beginning in that he wanted to maintain a good relationship with local realtors, an interest that would conflict with the plaintiffs' desire that their claim be asserted vigorously to the end that Huff, a local realtor, would compensate them for their damages. For example, the Wilsons wanted to be paid for the smaller-than-advertised size of the property they purchased, and it was clearly of no concern to them whether that compensation came from Huff or from his insurer. In contrast, the defendant fo-

cused his efforts on locating and notifying an insurance carrier that would cover Huff's liability to the Wilsons rather than simultaneously pursuing a claim directly against Huff. It is a fair inference that these differing views were attributable to the conflicting interests of Vanden Berg and the Wilsons.

We also think the record permits an inference that Vanden Berg knew he had a conflict of interest for the reasons discussed above. At the very least, the risk that harm would probably follow from his conflicted representation should have been obvious. Nonetheless, the defendant took the Wilsons' money and then offered half-hearted representation by failing to diligently assert the plaintiffs' claim because he put his own self-interest ahead of the Wilsons' interests. A fact finder could infer the defendant was consciously indifferent to the impact of his actions on the Wilsons.

We conclude the district court fairly concluded the defendant's conduct constituted a willful and wanton disregard for the plaintiffs' rights under the contract and a willful and wanton disregard of the plaintiffs' known and paramount interest that the matter be resolved quickly so Mary could care for her elderly parents.[4] Because the defendant's breach of contract also amounts to fraud, an intentional tort, there was a sufficient factual and legal basis for the court's award of punitive damages.

VII. *Summary and Disposition.*

Upon our review of the record, we conclude there is substantial evidence to support the district court's ruling that the defendant breached his contract with the plaintiffs and misrepresented that he had no conflict of interest that would interfere

4. This matter was drawn out so long Mary's mother passed away in March 2002 in Wis-

with his handling of their case. There is also sufficient evidence that the defendant acted in willful and wanton disregard for the plaintiffs' rights. Therefore, we affirm the judgment awarding compensatory and punitive damages to the Wilsons.

**AFFIRMED.**

consin before arrangements could be made for her to move to Iowa.