**IOWA, CHICAGO & EASTERN RAILROAD CORPORATION, Plaintiffs,**

**v.**

**PAY LOAD, INC. d/b/a Denny Wessels Transport, Inc. and Denny Wessels Transport; and Corey R. Wessels, Defendants.**

No. C03–3017–MWB.

United States District Court, N.D. Iowa, Central Division.

Dec. 16, 2004.

Brian J. Donahoe, Cutler & Donahoe, LLP, Sioux Falls, SD, for Plaintiff.

Joseph G. Van Winkle, R. Jeffrey Lewis, Kimberly Pieters Knoshaug, Lewis Webster Johnson & Van Winkle, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ...................................1048
 A. Procedural Background ...........................................1048
 B. Factual Background ..............................................1048

II. LEGAL ANALYSIS .......................................................1050
 A. Standards For Summary Judgment ................................1050
 B. Recovery For Liquidated Loss Value ............................1051
 C. Recovery For Punitive Damages ................................1054
 1. Corey Wessels ..............................................1054
 2. Pay Load ...................................................1055
 a. Reckless employment ...................................1056
 b. Authorization for actions .............................1057

III. CONCLUSION ..........................................................1057

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On February 25, 2003, Iowa, Chicago & Eastern Railroad Corporation ("IC & E") filed a complaint in this court against Pay Load, Inc. d/b/a Denny Wessels Transportation, Inc. and Denny Wessels Transport, and Corey R. Wessels. This diversity lawsuit arises from a truck-train accident in which a train operated by IC & E collided with a semi-truck owned or operated by defendants. In Count I of its complaint, IC & E alleges that defendants were negligent in several respects and that their negligence resulted in the collision occurring. In Count II, IC & E seeks punitive damages against defendants for their actions. Finally, in Count III, IC & E seeks a declaratory judgment regarding the rights and obligations of the parties vis-avis a locomotive lease agreement. On this claim, IC & E asserts that it is entitled to recover, for property damages to its locomotive, an amount equal to a "stipulated loss value" for the locomotive contained in a lease between IC & E and a third party, First Union Rail Corporation.

Defendants have filed a Motion for Partial Summary Judgment on two of IC & E's claims. First, in their motion, defendants contend that they are entitled to summary judgment on IC & E's claim for liquidated damages because IC & E did not have a vested right, title or interest in the locomotive other than a lease use right. Defendants further assert that the proper measure for damages under Iowa law is the difference between the market value of property before and after the damage to the property. Defendants also contend that the liquidated damages provision of the lease between IC & E and First Union Rail Corporation is inapplicable to them. Defendants also seek summary judgment on IC & E's punitive damage claims on the ground that IC & E cannot meet its burden of proof for punitive damages as a matter of law. IC & E has filed a timely response to defendants' Motion For Partial Summary Judgment.

Before turning to a legal analysis of defendants' Motion For Partial Summary Judgment, the court must first identify the standards for disposition of a motion for summary judgment, as well as the undisputed factual background of this case.

### B. Factual Background

The summary judgment record reveals that the following facts are undisputed. On August 1, 2002, a semi-truck operated by Corey Wessels, and transporting diesel fuel, collided with a train operated by IC & E at the junction of North 20th Street and IC & E's railroad tracks in Clear Lake, Iowa. IC & E's railroad tracks intersect 20th Street at an angle from northwest to southeast. Corey Wessels knew that a grade crossing was located on North 20th Street. At the time of the collision, Corey Wessels was employed by Pay Load as a truck driver. Defendant Denny Wessels Transport is not a separate corporation or entity but is a business trade name for Pay Load, Inc. Denny Wessels was president of Pay Load and its sole shareholder. Corey Wessels was operating a semi-truck with a tanker type trailer attached, approaching the grade crossing from the south. He held a commercial drivers license with a "hazardous materials endorsement" at the time of the accident. Corey Wessels knew that state law required him to come to a complete stop prior to entering the railroad grade crossing on North 20th Street in Clear Lake, Iowa. Prior to the collision, Corey Wessels was trained to stop at all grade crossings to look and listen for trains when transporting diesel fuel. Corey Wessels slowed down and turned on his flashing hazard lights. The train crew believed, until just before impact, that the

truck was going slow enough to stop before the crossing. Locomotive engineer Russell Bell estimated the truck's speed to be six to eight miles per hour. Following the accident, Iowa Department of Transportation Officer Robert Johnson ruled out any alcohol use by Corey Wessels. Prior to the collision, Corey Wessels was aware that a fire caused by a collision between his truck and a train could cause substantial damage to the property of others in addition to his company's truck. Although IC & E witnesses have indicated that the train blew its whistle before entering the railroad grade crossing on North 20th Street, Corey Wessels testified in his deposition that he did not hear the train whistle.

Following the collision, temporary stop signs were placed at the crossing while repairs were being made. Despite the presence of temporary stop signs, Wessels Transport trucks drove through the crossing without stopping.

The compensatory damages claimed by IC & E arising out of the collision are for property damage to its lead locomotive, FURX 7206, together with damage done to a second locomotive, FURX 8110, and certain other railroad equipment and property. Locomotives FURX 7206 and 8110 were leased by IC & E on June 5, 2002, from the First Union Rail Corporation ("First Union"). First Union is the second largest fleet locomotive lessor in the United States. Locomotive FURX 7206 is a model SD40–2 and is about 20 years old but the locomotive was re-manufactured more recently. Locomotive FURX 7206 was "arguably destroyed" due to the collision and subsequent fire. In the event of loss or destruction of a locomotive, the lease requires IC & E to pay First Union a pre-determined amount set forth in a "Stipulated Loss Schedule," attached to the lease as Schedule A. Fair market value was not a factor in determining the stipu-

lated loss amounts in the lease. Under the lease, IC & E, as lessee, has no "right, title, or interest" in the leased equipment, except the "right to use" it.

The IC & E has not paid the stipulated loss amount under the terms of the lease to First Union but has, instead, continued to make lease payments at the rate of $75.00 per day from and after August 1, 2002. While the lease payments reduce the stipulated loss number in the lease schedule, the reduction is not equal to the amount of the lease payments. The stipulated liquidated loss number was billed by First Union but the billing was rescinded due to an extension of the lease. There has been no effort by First Union, since its rescission of the billing, to collect any stipulated damages amount. IC & E has incurred approximately $41,000 in costs in lease payments on locomotive FURX 7206 since the accident.

On August 28, 2002, First Union obtained appraisals and average values of locomotives, including the model SD40–2. The values from appraisers in the industry ranged from $75,000 to $180,000. Defense's expert has opined that the FURX 7206 could be replaced with a locomotive of like condition and vintage for between $129,000 and $149,000. The defense expert also is of the opinion that FURX 7206 has a salvage value of $46,000. Since the time of the accident, the locomotive market has made a substantial upturn. Locomotives similar to FURX 7206 are now renting for $115 a day from First Union. There is a high demand for SD40–2 locomotives at this time, and First Union is not currently storing any SD40–2 locomotives. IC & E "cherry picked" the locomotives it leased from First Union. They were considered premium units. The lease agreement required IC & E to obtain casualty insurance relating to the leased locomo-

tives. IC & E obtained insurance with a $1,000,000 retention.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir. 2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim . . . is asserted . . . may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. o. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the rec-

ord, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same). With these standards in mind, the court turns to consideration of defendants' Motion for Partial Summary Judgment.

### B. Recovery For Liquidated Loss Value

The first issue raised by defendants' Partial Motion For Summary Judgement is whether IC & E can recover for the Stipulated Loss Value of its lead locomotive, FURX 7206, pursuant to the lease on that locomotive with First Union. Defendants assert that they are entitled, as a matter of law, to dismissal of IC & E's claim for stipulated loss value as provided for in its lease with First Union. Defendants argue that under Iowa law, the proper measure of damages is the difference between the fair market value of the locomotive before the accident and its fair market value after being damaged. Defendants further contend that the liquidated damage provision of the lease between IC & E and First Union does not apply to them. IC & E, in response, indicates that liquidated loss value is not currently an issue in this litigation because it has not been required by First Union to pay the Stipulated Loss Value but instead has been permitted to continue making payments of rent on the damaged locomotive, FURX 7206, thereby reducing the potential amount of the Stipulated Loss Value if it is paid. Thus, IC & E asserts that because the fair market value of its locomotive and the Stipulated Loss Value currently approximate one another now, there is no need for the court to determine if defendants are liable for damages in excess of the locomotive's fair market value.

Defendants direct the court's attention to a line of Iowa authorities governing damages to automobiles that was initially established by the Iowa Supreme Court in *In re Gray's Estate,* 201 Iowa 876, 208 N.W. 358 (1926). In *Long v. McAllister,* 319 N.W.2d 256 (Iowa 1982), the Iowa Supreme Court expanded these rules by adding to the measure of damages the loss of the reasonable value of the use of the vehicle during the time of its repair or replacement. As reformulated in *Long,* the rules provide as follows:

(1) When the motor vehicle is totally destroyed or the reasonable cost of repair exceeds the difference in reasonable market value before and after the injury, the measure of damages is the lost market value plus the reasonable value of the use of the vehicle for the time reasonably required to obtain a replacement.

(2) When the injury to the motor vehicle can be repaired so that, when repaired, it will be in as good condition as it was in before the injury, and the cost of repair does not exceed the difference in market value of the vehicle before and after the injury, then the measure of damages is the reasonable cost of repair plus the reasonable value of the use of the vehicle for the time reasonably required to complete its repair.

(3) When the motor vehicle cannot by repair be placed in as good condition as it was in before the injury, then the measure of damages is the difference between its reasonable market value before and after the injury, plus the reasonable value of the use of the vehicle for the time reasonably required to repair or replace it.

*Long,* 319 N.W.2d at 261; *Papenheim v. Lovell,* 530 N.W.2d 668, 671 (Iowa 1995) (same); *Hawkeye Motors, Inc. v. McDo-*

*well*, 541 N.W.2d 914, 917 (Iowa Ct.App. 1995) (same).

The Iowa rule applied in *Long* is consistent with the rule adopted in the Restatement (Second) of Torts for damage to chattels:

When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for

(a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs, and

(b) the loss of use.

RESTATEMENT (SECOND) OF TORTS § 928 (1979). Because the Iowa appellate courts place considerable confidence in the Restatement of Torts, *see Shaw v. Soo Line R. Co.,* 463 N.W.2d 51, 55 (Iowa 1990) (noting that the Supreme Court of Iowa places weight upon the Restatement of Torts), the court will look there for guidance. On the record before the court, Restatement (Second) of Torts § 927 comes closer to addressing the situation here than Restatement (Second) of Torts § 928. The court arrives at this conclusion for several reasons. Restatement (Second) of Torts § 927 provides:

(1) When one is entitled to a judgment for the conversion of a chattel or the destruction or impairment of any legally protected interest in land or other thing, he may recover either

(a) the value of the subject matter or of his interest in it at the time and place of the conversion, destruction or impairment; or

(b) in the case of commodities of fluctuating value customarily traded on an exchange to which traders customarily resort, the highest replacement value of the commodity within a reasonable period during which he might have replaced it.

(2) His damages also include:

(a) the additional value of a chattel due to additions or improvements made by a converter not in good faith;

(b) the amount of any further pecuniary loss of which the deprivation has been a legal cause;

(c) interest from the time at which the value is fixed; and

(d) compensation for the loss of use not otherwise compensated.

RESTATEMENT (SECOND) OF TORTS § 927. Thus, the text of § 927 clearly indicates that it applies where there has been destruction of either a thing or a legally protected interest in it. Here, IC & E did not own the FURX 7206 and FURX 8110 locomotives but were leasing them from First Union. As such, it was IC & E's possessory interests in the two locomotives which were damaged or destroyed by the accident. Section 928 does not speak in terms of such "interests" in chattel. Moreover, § 928 is limited by its terms to "harm to chattels not amounting to total destruction in value." Here, IC & E's possessory interest of use of locomotive FURX 7206 was totally destroyed by the accident. Also, pertinent here is comment m to § 927, which provides that:

*m. Further loss.* The person entitled to the value of a thing taken or destroyed by a tortfeasor is entitled to recover for any further loss suffered by him as the result of the deprivation, subject to the rules stated in §§ 912 and 917 as to certainty and causation. Thus one whose automobile is destroyed and who is consequently required to walk to a nearby town may be entitled to recover for loss of time and harm that proximately results to him from the walk. Likewise one who has made a contract

for the sale of an article is entitled to obtain from one who tortiously deprived him of the article the profits that he would have made by completing the sale. In this case, however, even though the taking was consciously wrongful, the plaintiff is not entitled to recover both the profits he would have made and a higher value than that existing at the time of the taking.

RESTATEMENT (SECOND) OF TORTS § 927, cmt. m. Here, under the terms of the lease, IC & E is obligated, upon demand by First Union, in the event of loss or destruction of a locomotive, to pay First Union a pre-determined amount as set forth in a Stipulated Loss Schedule which is attached to the lease. Such a loss appears to fall squarely within the framework of comment m. Moreover, such a result is in keeping with the principles underlying the allowance of damages in tort actions. As the Iowa Court of Appeals observed:

"It is axiomatic that the principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed." *Dealers Hobby [v. Marie Ann Linn Realty Co.]*, 255 N.W.2d [131] at 134 [ (Iowa 1977) ] (citations omitted). However, no injured party should receive more than has been

lost as a result of another's wrongdoing. *Iowa Power [v. Board of Water Works ]*, 281 N.W.2d [827] at 832 [ (Iowa 1979) ] (citing *Dealers Hobby,* 255 N.W.2d at 134).

*United States Borax & Chem. Corp. v. Archer–Daniels–Midland Co.,* 506 N.W.2d 456, 460 (Iowa App.1993); *see Long v. McAllister,* 319 N.W.2d 256, 259 (Iowa 1982).[1]

In this case, the evidence may well establish that only by allowing IC & E to recover for the amount set forth in the lease's Stipulated Loss Schedule will IC & E be restored back to its original position. Under such circumstances, the court concludes that in order to permit IC & E full compensation it will be entitled to seek to recover the amount set forth in the lease's Stipulated Loss Schedule. However, it is also axiomatic that "no injured party should receive more than has been lost as a result of another's wrongdoing." *United States Borax & Chem. Corp.,* 506 N.W.2d at 460 (citing *Iowa Power,* 281 N.W.2d at 832 and *Dealers Hobby,* 255 N.W.2d at 134). Thus, if the evidence at trial establishes that IC & E will not be required to pay First Union the amount set forth in the lease's Stipulated Loss Schedule, but instead a lesser amount, IC & E will not be permitted to seek such damages. Therefore, this portion of defendants' Mo-

1. Defendants assert that because they did not agree to the "Stipulated Loss Value" for the locomotive that they cannot be bound by the lease's terms. Defendants also assert that the liquidated damage provision is void as an unenforceable penalty. The flaw in these arguments is that IC & E is not seeking to enforce the lease against defendant, only to be reimbursed for any losses it has suffered that flow from the lease's terms. The court similarly finds unpersuasive defendants' contention that such damages may not be assessed against it because such damages could not have been reasonably foreseen. The Iowa Supreme Court has instructed that:

In negligence cases it is not necessary to a defendant's liability that the wrongdoer should have foreseen the extent of the harm or the manner in which it occurred, so long as the injuries are the natural, though not inevitable, result of the wrong.

*Nachazel v. Miraco Mfg.,* 432 N.W.2d 158, 160 (Iowa 1988) (citing *Cronk v. Iowa Power & Light Co.,* 258 Iowa 603, 613, 138 N.W.2d 843, 849 (1965)). Here, there is no dispute that as a consequence of the destruction of the locomotive that resulted from the accident at issue that IC & E is contractually obligated to pay to First Union the "Stipulated Loss Value" called for in the lease.

tion for Partial Summary Judgment is denied.

### C. Recovery For Punitive Damages

Defendants further assert that they are entitled, as a matter of law, to dismissal of IC & E's claim for punitive damages because IC & E cannot meet its burden of proof for punitive damages as to either the truck driver, defendant Corey Wessels, or his employer, defendant Pay Load. The court will take up IC & E's claims against each of these defendants in turn.

### 1. Corey Wessels

■■■■ Under Iowa law, punitive damages are appropriate when "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." IOWA CODE § 668A.1(1)(a). The Iowa Supreme Court has defined the terms "willful and wanton" in the context of § 668A.1(1) to mean:

> " '[T]he Actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which is usually accompanied by a conscious indifference to the consequences.' "

*Mercer v. Pittway Corp.*, 616 N.W.2d 602, 617 (Iowa 2000) (quoting *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990)) (quoting in turn W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 34, at 213 (5th ed.1984)); *accord Wilson v. Vanden Berg*, 687 N.W.2d 575, 586 (Iowa 2004) (same); *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 395 (Iowa 2001) (same); *McClure v. Walgreen Co.*, 613 N.W.2d 225, 230 (Iowa 2000) (same). The Iowa appellate courts have noted that "merely negligent conduct will not, without more, support an award of punitive damages." *Hamilton v. Mercantile Bank of Cedar Rapids*, 621 N.W.2d

401, 407 (Iowa 2001); *see Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 256 (Iowa 1993). Rather, to establish the requirement of "willful and wanton disregard for the rights or safety of another," a plaintiff must show that the defendant's conduct constituted actual or legal malice. *Gibson*, 621 N.W.2d at 395; *Schultz v. Security Nat'l Bank*, 583 N.W.2d 886, 888 (Iowa 1998); *McClure*, 613 N.W.2d at 231; *Reed v. Chrysler Corp.*, 494 N.W.2d 224, 229 (Iowa 1992); *Barnhouse v. Hawkeye State Bank*, 406 N.W.2d 181, 184 (Iowa 1987); *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 167 (Iowa 1984). " 'Actual malice is characterized by such factors as personal spite, hatred, or ill will.' " *Gibson*, 621 N.W.2d at 395 (quoting *McClure*, 613 N.W.2d at 231); *see Schultz*, 583 N.W.2d at 888; *Parks v. City of Marshalltown*, 440 N.W.2d 377, 379 (Iowa 1989). " 'Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights.' " *Gibson*, 621 N.W.2d at 395 (quoting *McClure*, 613 N.W.2d at 231); *see Schultz*, 583 N.W.2d at 888; *Parks*, 440 N.W.2d at 379. An award of punitive damages is inappropriate when room exists for reasonable disagreement over the relative risks of the conduct at issue. *Larson v. Great West Casualty Co.*, 482 N.W.2d 170, 174 (Iowa Ct.App.1992); *Burke v. Deere & Co.*, 6 F.3d 497, 511 (8th Cir.1993) (applying Iowa law), *cert. denied*, 510 U.S. 1115, 114 S.Ct. 1063, 127 L.Ed.2d 383 (1994).

■■■■ Applying those principles to this case, the court concludes that questions of material fact exist so as to preclude the granting of summary judgment on this matter. While the court considers this to be a close question, viewing the record in the light most favorable to IC & E, the record contains sufficient evidence of conduct so egregious as to support an award of punitive damages in this case as to the

truck driver, defendant Corey R. Wessels. First, while the evidence IC & E offers in resistance to defendants' motion does not show Corey Wessels acted with "spite, hatred, or ill will" when he drove the truck he was operating across the railroad crossing, a material question of fact has been generated as to whether Corey Wessels saw or knew that a train was approaching the intersection when he drove his truck across it. The record clearly shows that Corey Wessels failed to observe the train approaching. Moreover, genuine issues of material fact exist as to whether he looked for a train when approaching the crossing and whether he stopped at the railroad crossing before proceeding across it. It must be remembered that, under Iowa law, conduct does not rise to the level of willful and wanton unless the actor disregards a risk so great as to make it "highly probable" that harm would follow. *See Mercer,* 616 N.W.2d at 617; *see also Wilson,* 687 N.W.2d at 586; *Gibson,* 621 N.W.2d at 395; *McClure,* 613 N.W.2d at 230; *Fell,* 457 N.W.2d at 919. Rolling through a railroad crossing without looking while driving a tanker truck full of volatile liquids is a highly dangerous activity, the imminent risk of harm from doing so could make it highly probable that harm would follow. Thus, considering the evidence in the light most favorable to IC & E, material questions of fact exist as to whether Corey Wessels's actions would support a finding of willful and wanton conduct on his part sufficient to support an award of punitive damages. Therefore,

**2.** The court notes that the complicity rule as expressed in the Restatement (Second) of Torts § 909, is nearly identical to that found in Restatement (Second) of Agency § 217C. *Restatement (Second) of Agency § 217C* provides:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

this portion of defendants' Motion for Partial Summary Judgment is denied.

### 2. Pay Load

IC & E also seeks punitive damages against Pay Load. The Iowa Supreme Court has discussed the proper test to be applied under Iowa law in order to determine whether a corporate employer may be held liable for punitive damages for the acts of an employee. In *Briner v. Hyslop,* 337 N.W.2d 858 (Iowa 1983), the Iowa Supreme Court adopted the so-called complicity rule for determining whether an employer may be held liable for punitive damages in conjunction with the acts of one of its employees. *Id.* at 867. The complicity rule adopted in *Briner* states:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:
>
> (a) the principal authorized the doing and the manner of the act, or
>
> (b) the agent was unfit and the principal was reckless in employing him, or
>
> (c) the agent was employed in a managerial capacity and was acting in the scope of his employment, or
>
> (d) the principal or the managerial agent of the principal ratified or approved the act.

*Id.* at 861 (quoting RESTATEMENT (SECOND) OF TORTS § 909 (1979)); *accord Seraji v. Perket,* 452 N.W.2d 399, 400 (Iowa 1990).[2] These four alternatives set out the type of conduct by an employer that constitutes

> (a) the principal authorized the doing and the manner of the act, or
> (b) the agent was unfit and the principal was reckless in employing him, or
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> (d) the principal or a managerial agent of the principal ratified or approved the act.
> RESTATEMENT (SECOND) OF AGENCY § 217C.

legal malice. *Seraji,* 452 N.W.2d at 401. No claim is made by IC & E that Corey Wessels was acting in a managerial capacity nor does IC & E claim that Pay Load ratified or approved of Wessels's actions. Rather, IC & E's claim for punitive damages against Pay Load is predicated on the fact that Corey Wessels was unfit as a truck driver and that Pay Load was reckless in employing him to transport hazardous substances. IC & E also asserts a claim for punitive damages against Pay Load under the theory that it authorized the manner in which Corey Wessels operated his semi-truck. The court will consider each of these claims in turn.

### a. Reckless employment

■ In support of its claim that Pay Load was reckless in employing Corey Wessels to drive semi-trucks to transport fuel, IC & E points to the fact that Corey Wessels had little experience driving solo with a load of fuel and that he had been involved in a prior accident. The record shows that Corey Wessels had a commercial drivers license with a hazardous materials endorsement and that he was trained and qualified to a drive a semi-truck. The record shows that Pay Load's procedure in performing a background check for Corey Wessels was entirely consistent with all federal requirements. The accident which IC & E points to occurred fourteen months prior to the incident in question here and did not involve Corey Wessels's operation of a semi-truck. Instead, he was driving a pickup truck when he hit a young child on a bicycle who darted out into traffic, resulting in the child receiving a broken arm. Corey Wessels was not ticketed as a result of the accident. The facts of this case pale in comparison to the driving record and history of the truck driver at the center of the *Seraji* decision. In *Seraji,* the plaintiff presented the following evidence regarding the background of the truck driver involved in that case:

The Serajis presented evidence that Perket's driving record prior to employment with Lenertz was not good. Upon investigation of Perket's driving record, the company learned that his license had been revoked on at least one occasion, that he had been convicted of speeding on at least four occasions, and that he had also been convicted of driving without a license . . .

The Serajis also presented evidence of Perket's driving record while employed by the company. They introduced evidence showing that he had been convicted of moving violations on two occasions in 1983, and introduced letters of reprimand from Lenertz regarding three minor "avoidable" accidents that Perket was involved in.

*Seraji,* 452 N.W.2d at 402. In spite of this parade of horribles, the Iowa Supreme Court concluded that: "It is clear, however, that these failures did not constitute reckless conduct of the type contemplated by our decision in *Briner.*" *Id.* The court reasoned that:

The evidence adduced by the Serajis shows that [the employer] was at most negligent in hiring and retaining Perket. Its conduct does not show the type of reckless disregard for the safety of others that justifies punitive damages.

*Id.* Using the *Seraji* decision as a legal guidepost, the court similarly concludes here that on the record before the court, at most, IC & E can demonstrate that Pay Load was negligent in its hiring of Corey Wessels. That showing, however, is insufficient to support an award of punitive damages. *See Hamilton,* 621 N.W.2d at 407; *Mercer,* 616 N.W.2d at 617; *McClure,* 613 N.W.2d at 230; *McGough v. Gabus,* 526 N.W.2d 328, 334 (Iowa 1995); *Beeman,* 496 N.W.2d at 256; *Fell,* 457 N.W.2d at 919. By hiring Corey Wessels, Pay Load did not engage in such conduct that would

rise to the level of reckless disregard for the safety of others that justifies punitive damages. *Seraji*, 452 N.W.2d at 402. Therefore, this portion of defendants' Motion for Partial Summary Judgment is granted.

### b. Authorization for actions

Finally, IC & E asserts, as a basis for punitive damages against Pay Load, that Pay Load authorized Corey Wessels's driving through railroad intersections without stopping. The problem with IC & E's assertion, however, is a decided lack of proof. IC & E can offer no direct evidence that Pay Load directed Corey Wessels, or any of its other drivers, to not stop at railroad crossings when transporting hazardous materials. To the contrary, Denny Wessels, Pay Load's President, testified that following the accident at issue here, he personally discussed with each of his drivers "[t]he importance of safety, the importance of stopping at tracks, the importance of just good general driving habits." Denny Wessels's Dep. at 101–02, Substituted Appendix at 27.

■■■ IC & E also points to the failure of Pay Load to fire Corey Wessels after the accident as evidence of Pay Load's approval of Corey Wessels's actions. However, it is clear that the "mere failure to dismiss a servant, unaccompanied by conduct indicating approval of the wrongful conduct, is not a sufficient basis on which to impose punitive damages," RESTATEMENT (SECOND) OF AGENCY § 217C cmt. b. Similarly, IC & E's reliance on post-accident conduct of other Pay Load drivers is misplaced. IC & E asserts that on, two occasions following the accident, Pay Load trucks were observed failing to stop at the same railroad crossing before proceeding through it. IC & E argues that this is evidence of post-accident authorization for Corey Wessels's actions. The flaw here is that there is no evidence that Pay Load approved of these actions. In addition,

these actions were in clear violation of established Pay Load policy that required its drivers to stop at all railroad crossings, look both ways, and then proceed to cross. Moreover, as noted above, the President of Pay Load met with each of Pay Load's drivers after the accident and emphasized the importance of stopping at all railroad crossings. Therefore, the court concludes that IC & E has not generated a genuine issue of material fact on the question of Pay Load's authorization of Corey Wessels's driving through railroad intersections without stopping. Therefore, this portion of defendants' Motion for Partial Summary Judgment is also granted.

## III. CONCLUSION

The court finds that, under the terms of the lease, IC & E is obligated upon the destruction of a locomotive leased from First Union to pay First Union a predetermined amount as set forth in a Stipulated Loss Schedule. At trial, the evidence may well establish that only by allowing IC & E to recover for the amount set forth in the lease's Stipulated Loss Schedule will IC & E be restored back to its original position. Under such circumstances, the court concludes that in order to permit IC & E full compensation it will be entitled to seek to recover the amount set forth in the lease's Stipulated Loss Schedule. However, if the evidence at trial establishes that IC & E will not be required to pay First Union the amount set forth in the lease's Stipulated Loss Schedule, but instead a lesser amount, IC & E will not be permitted to seek such damages. Therefore, this portion of defendants' Motion for Partial Summary Judgment is denied. The court further denies defendants' Motion for Partial Summary Judgment as to IC & E's claims for punitive damages against Corey Wessels but grants defendants' Motion for Partial Summary Judgment as to IC & E's claims

for punitive damages against Pay Load. The court concludes that material questions of fact exist as to whether Corey Wessels's actions would support a finding of willful and wanton conduct on his part sufficient to support an award of punitive damages, but concludes that by hiring Corey Wessels, Pay Load did not engage in such conduct that would rise to the level of reckless disregard for the safety of others that justifies punitive damages and that IC & E has not generated a genuine issue of material fact on the question of Pay Load's authorization of Corey Wessels's conduct.

**IT IS SO ORDERED.**