# IN THE SUPREME COURT OF IOWA

No. 17–0931

Filed November 16, 2018

**STATE OF IOWA,**

Appellee,

vs.

**TERRAN ROACHE,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, James B. Malloy, District Associate Judge.

Defendant seeks further review of court of appeals decision affirming restitution judgment. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

John L. Dirks of Dirks Law Firm, Ames, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, Jessica Reynolds, County Attorney, and Adam Kenworthy, for appellee.

**WATERMAN, Justice.**

In this appeal, we review the level of scrutiny for a criminal restitution award. The operator of a training course for commercial truck drivers imposed a $1900 "fine" on its student for the loss of a paperback study guide, a multiple of the full cost of the course that included the guide. The study guide was in a backpack stolen from the student's parked car. The student has not paid the fine, and his automobile insurer determined the paperback guide had no value. The district court presumed that $1900 far exceeded the actual cost to print the guide but nevertheless ordered the defendant who pled guilty to the theft to pay that amount in victim restitution. The defendant appealed to challenge that amount alone, and we transferred the case to the court of appeals, which affirmed. We assuaged our sticker shock by granting the defendant's application for further review.

We hold that the scope-of-liability analysis in sections 29 and 33 of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (Am. Law Inst. 2010) [hereinafter Restatement (Third) of Torts] applies in criminal restitution determinations. For the reasons set forth below, we reverse the $1900 fine-based restitution award as punitive and unsupported by substantial evidence.

### I. Background Facts and Proceedings.

On October 8 and 14, 2016, police received multiple reports of vehicle break-ins at a parking garage in Ames, Iowa. Officers interviewed victims and reviewed surveillance video from security cameras. One victim reported that her stolen credit card was being used at a local liquor store and bar. Officers went to that vicinity and approached a man recognized from the video. The man, Terran Roache, attempted to flee. Officers

apprehended him after a brief pursuit. Roache possessed property stolen from several of the victims and a tire iron.

The State charged Roache with eleven counts: two counts of criminal mischief in the second degree in violation of Iowa Code sections 716.1, 716.2, and 716.4; six counts of burglary in the third degree in violation of sections 713.1 and 713.6A(2); one count of possession of burglar's tools in violation of section 713.7; one count of unlawful use of a credit card in violation of sections 715A.1, 715A.6(1), and 715A.6(2)(*c*); and one count of theft in the second degree in violation of sections 714.1 and 714.2(2). In January 2017, Roache, pursuant to a written plea agreement, entered a guilty plea to one count of criminal mischief and one count of burglary. He agreed to pay restitution on all eleven counts. In exchange, the State agreed to dismiss the remaining nine counts. At the plea hearing, after engaging in a colloquy with Roache, the district court accepted his guilty pleas.

The district court sentenced Roache to an indeterminate prison term not to exceed five years for criminal mischief and two years for burglary, with the sentences to run concurrently and with credit for time served. The court dismissed the remaining counts but ordered Roache to pay restitution on all eleven counts consistent with his plea agreement. The court gave the State thirty days to file a pecuniary damages statement itemizing the amount of restitution each victim was seeking. *See* Iowa Code § 910.3 (2016).

The State submitted a pecuniary damages statement seeking a total of $4515.80 in restitution to reimburse Roache's victims for vehicle damage and stolen property. The court approved the amount in full, but gave Roache thirty days to object.

Roache timely filed a written objection to two items: $1900 to replace Jordan Hagedon's stolen study guide and $958.72 to repair Haoran Wang's windshield. Roache requested a hearing on his objections.

At the restitution hearing, Hagedon testified he found his Hyundai Santa Fe with a broken window and his backpack missing from the backseat. The study guide, a laptop, a laptop charger, a change of clothes, and prescription eyeglasses were inside the backpack. Neither the backpack nor its contents were recovered. Hagedon submitted a claim to his insurance company. The insurance company determined the study guide had no value, but reimbursed Hagedon for the cost of the remaining items, less his $500 deductible. Hagedon also sought the $500 deductible in restitution, and Roache does not dispute the award of that amount.

Hagedon was enrolled in a course through Northland CDL Training & Licensing to obtain his commercial driver's license (CDL). As part of the course, Northland issued Hagedon a "Pre-Trip Inspection Study Guide." The study guide was soft-covered, approximately six inches wide by eight or ten inches long, and between a quarter- and half-inch thick. Two weeks before the theft, Hagedon had signed Northland's "check-out agreement" for the study guide, which stated,

> I, Jordan Hagedon am a student in the CDL Driver Prep. Course that includes the use of the "Pre-Trip Inspection Study Guide", a published, marked and copyright[ed] booklet, and the sole property of Northland CDL Training, © 2012.
>
> I was made fully aware at the opening class session that I am responsible for returning aforementioned study guide. It was explained fully that if I did not complete ALL portions of the assignments I AM NOT eligible to continue with the CDL Skills testing conducted with a tractor/trailer by the college staff.
>
> By not returning the said study guide on my final testing date, I also fully understand that in addition to a fine for claiming the booklet was lost, I will be listed as incomplete for that assignment and may be deemed as not eligible to be tested for a CDL, thus having any test results become Null and Void. In

that event, I fully understand and agree that I may not be issued a CDL regardless of the outcome of the Skills Testing.

The "Pre-Trip Inspection Study Guide" text is copyright protected. Any use in an unauthorized manner, the copyright holders will pursue damages to the full extent of the copyright infringement laws, according to Chapter Five, Article 504 of the U.S. Copyright Act, each infringement carries a minimum $750 and maximum $30,000 penalty, while willful infringement carries a maximum penalty of $150,000. This in addition to court orders to pay all legal fees involved.

I understand and agree with these terms and conditions on this date with my pledge to return the Pre-Trip Inspection Study Guide when I come for my final testing day or by mail to the above address if for any reason I do not complete the course.

I am taking Study Guide Number 1895.

The agreement was silent as to the amount of the fine Northland would charge Hagedon if he failed to return the study guide.

On October 10, two days after the theft, but before Roache's arrest, Hagedon signed another Northland document that for the first time set the dollar amount of the fine at $1900, and stated,

I was made fully aware at the opening class session that I am responsible for the "Pre-Trip Inspection Study Guide" and by not returning it would result in a FINE (see attached copy of presentation slide, class handout and check-out agreement signed by the student). The "Pre-Trip Inspection Study Guide" book I was issued was Number 01895.

By losing and not returning the said study guide on my final testing date, I also fully understand I will be charged a fine of 4X the course tuition. The calculated charge for this course is $1,900 (one thousand, nine hundred dollars).[1]

The attached presentation slide describes the study guide and states, "You MUST Return [the study guide] To Us When You Come For Your Phase 3 Training/Testing. YOU WILL BE CHARGED A FINE IF YOU LOSE IT!!!" The handout attached to the contract is a letter from Randy Grey, Lead Instructor, stating in part, "The Study Guide Is Copyright Protected And

---

[1]The record is unclear whether $1900 is the cost of the course or four times the course tuition.

Is On <u>LOAN</u> To You. It <u>MUST</u> Be Returned When You Come For Final Testing. Failure to return it will result in a <u>COSTLY FINE</u>." No dollar amount of the fine was mentioned in the handout or slide.

Hagedon has not paid Northland any amount for the stolen study guide, but has an outstanding $1900 balance with Northland for the full amount of its fine. Hagedon testified that "[Northland has] been waiting for what we would hear from restitution." Hagedon has completed Northland's course and received his CDL.

On cross-examination, Hagedon agreed that the value of the study guide was not $1900. The court asked Hagedon if he had talked to Northland about waiving the fine because the study guide was stolen. Hagedon replied,

> I did. All they said was that they reiterated the fact that people have not returned them in the past, and they do charge the four times the cost of the class. And I did ask that, and they said that if I did get money out of the restitution, they'd like to see that, because it's still a risk to them, I guess, with their copyrighting or their—they wrote that book, they publish that book themselves, and they didn't want that getting out. And any restitution that came out of this, they would still like to get. I haven't spoke[n] with them since probably the day of the class.

Hagedon testified he did not know what would happen if he failed to pay the fine or if the fine was omitted from the restitution award.

In a written ruling, the district court ordered Roache to pay $3557.08 in restitution, including $1900 for Hagedon's study guide. In its ruling, the district court found

> [t]he "damage" to the victim for failing to return the study guide came to $1,900. But for the defendant's criminal actions, [Hagedon] would not have been assessed that "fine." The Court would presume that $1,900 far exceeds the actual cost to print the study guide, but the actual cost of the study guide does not reimburse [Hagedon] for the loss he sustained as a result of the defendant's actions.

Neither the State nor the victim introduced evidence on Wang's $958.72 claim for his windshield repair, and accordingly, the court disallowed that amount.

Roache appealed, challenging only the $1900 restitution award for the study guide. We transferred the case to the court of appeals. The court of appeals determined that the $1900 award was supported by substantial evidence and Hagedon's "loss" in that amount was causally related to Roache's criminal activities. The court of appeals affirmed the district court's restitution award in full. We granted Roache's application for further review.

**II. Standard of Review.**

We review the district court's restitution order for correction of errors at law. *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 470 (Iowa 2017). "In reviewing a restitution order 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.'" *State v. Hagen*, 840 N.W.2d 140, 144 (Iowa 2013) (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Bonstetter*, 637 N.W.2d at 165 (quoting *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999)).

**III. Analysis.**

We must decide whether the district court erred by including the $1900 fine for the stolen study guide in the restitution order. We begin with an overview of the law governing restitution. We adopt the scope-of-liability analysis in the Restatement (Third) of Torts for criminal restitution cases. We then address Roache's challenges to the $1900 award and conclude the district court erred by awarding that amount without substantial evidentiary support.

**A. Restitution Framework.** "[T]he purpose of restitution is two-fold. It not only serves to protect the public by compensating victims for criminal activities, but it also serves to rehabilitate the defendant." *State v. Izzolena*, 609 N.W.2d 541, 548 (Iowa 2000). "Unlike other forms of penal sanctions, restitution forces the offender to answer directly for the consequences of his or her actions." *Bonstetter*, 637 N.W.2d at 165. We thoroughly reviewed the history of criminal restitution in *State v. Jenkins*, 788 N.W.2d 640, 642–43 (Iowa 2010) (surveying state and federal legislation and caselaw).

Iowa Code chapter 910 governs criminal restitution. "Restitution is mandatory '[i]n all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered.'" *Hagen*, 840 N.W.2d at 149 (alteration in original) (quoting Iowa Code § 910.2(1)). Restitution orders may include payment of pecuniary damages to the victim and payment of criminal fines, penalties, and surcharges to the clerk of court. Iowa Code §§ 910.1(4), .2(1); *Hagen*, 840 N.W.2d at 149. Section 910.1 limits restitution for the victim's pecuniary damages to those recoverable in a civil action and unreimbursed by insurance:

> "*Pecuniary damages*" means all damages to the extent not paid by an insurer, *which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages* and damages for pain, suffering, mental anguish, and loss of consortium. Without limitation, "*pecuniary damages*" includes damages for wrongful death and expenses incurred for psychiatric or psychological services or counseling or other counseling for the victim which became necessary as a direct result of the criminal activity.

Iowa Code § 910.1(3) (second emphasis added).[2]

---

[2]In *State v. Dubois*, we held a victim was not required to submit a claim to her insurer, noting the term " 'all damages to the extent not paid by an insurer' means all amounts not actually paid. It does not mean amounts that might be

Criminal restitution is further linked to civil tort recoveries through section 910.8, which provides, "[A]ny restitution payment by the offender to a victim shall be set off against any judgment in favor of the victim in a civil action arising out of the same facts or event." *Id.* § 910.8. In *State v. Driscoll,* we observed "the purpose of section 910.8 [is] to coordinate a criminal-restitution payment with a civil-damage award to prevent the victim from receiving a windfall." 839 N.W.2d 188, 191 (Iowa 2013). The setoff provision also applies to reduce the restitution award by the amount recovered in the civil suit to avoid a double recovery. *Id.*

The state bears the burden of proof to recover damages due the victim. *Bonstetter*, 637 N.W.2d at 170. In *Bonstetter*, we set forth the procedure for determining the amount of restitution, including proof of causation, stating,

> In calculating a restitution order, the district court must find a causal connection between the established criminal act and the injuries to the victim. The damage must have been caused by the offender's criminal act to justify the restitution order. Once the causal connection is established by a preponderance of the evidence, "the statute allows recovery of 'all damages' . . . which the state can show by a preponderance of the evidence." A restitution order is not excessive "if it bears a reasonable relationship to the damage caused."

*Id.* at 168 (alteration in original) (citations omitted) (first quoting *State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct. App. 1995); then quoting *State v. Mayberry*, 415 N.W.2d 644, 647 (Iowa 1987)); *see also Jenkins*, 788 N.W.2d at 647 (allowing district court review of factual causation in restitution claims by Crime Victim Compensation Program).

"Generally, causation exists in criminal law, often without much fanfare, as a doctrine justifying the imposition of criminal responsibility by

_____

paid, could be paid, will be paid, or even should be paid by the insurer." 888 N.W.2d 52, 54–55 (Iowa 2016).

requiring a 'sufficient causal relationship between the defendant's conduct and the proscribed harm.' " *State v. Tribble*, 790 N.W.2d 121, 126 (Iowa 2010) (quoting *State v. Marti*, 290 N.W.2d 570, 584 (Iowa 1980)). We previously observed that

> [c]ausation has two components: "(1) the defendant's conduct must have *in fact caused* the plaintiff's damages (generally a factual inquiry) and (2) the policy of the law must require the defendant to be *legally responsible* for the injury (generally a legal question)."

*Berte v. Bode*, 692 N.W.2d 368, 372 (Iowa 2005) (quoting *Gerst v. Marshall*, 549 N.W.2d 810, 815 (Iowa 1996)); *see also State v. Watts*, 587 N.W.2d 750, 751 (Iowa 1998) ("We have said that section 910.1(3) 'connote[s] a requirement that the victim prove a prima facie case of liability premised on some civil theory such as fault or intentional tort. Proximate cause, of course, would be a necessary element of such a prima facie case.' " (quoting *State v. Starkey*, 437 N.W.2d 573, 574 (Iowa 1989))). Factual causation is determined through a "but for" test:

> [T]he defendant's conduct is a cause in fact of the plaintiff's harm if, but-for the defendant's conduct, that harm would not have occurred. The but-for test also implies a negative. If the plaintiff would have suffered the same harm had the defendant not acted negligently, the defendant's conduct is not a cause in fact of the harm.

*Berte*, 692 N.W.2d at 372 (quoting Dan B. Dobbs, *The Law of Torts* § 168, at 409 (2000)).

In *Thompson v. Kaczinski*, we bifurcated proximate cause into factual cause and scope of liability and adopted the Restatement (Third) of Torts risk standard for civil tort actions. 774 N.W.2d 829, 837–39 (Iowa 2009). This standard "is intended to prevent the unjustified imposition of liability by 'confining liability's scope to the reasons for holding the actor liable in the first place.' " *Id.* at 838 (quoting Restatement (Third) of Torts

§ 29 cmt. *d*, at 496). "The scope-of-liability issue is fact-intensive as it requires consideration of the risks that made the actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks." *Id.* To determine whether

> the plaintiff's harm is beyond the scope of liability as a matter of law, courts must initially consider all of the range of harms risked by the defendant's conduct that the jury *could* find as the basis for determining [the defendant's] conduct tortious. Then, the court can compare the plaintiff's harm with the range of harms risked by the defendant to determine whether a reasonable jury might find the former among the latter.

*Id.* (alteration in original) (quoting Restatement (Third) of Torts § 29 cmt. *d*, at 496); *see also Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 741–45 (Iowa 2009) (applying scope-of-liability analysis to determine damages recoverable for fraud).

The scope of liability is broader for intentional torts. *Spreitzer*, 779 N.W.2d at 741 ("We readily acknowledge legal causation for intentional torts often reaches a broader range of damages for harm than legal causation reaches in cases involving unintentional torts."). The applicable Restatement section provides, "An actor who intentionally or recklessly causes harm is subject to liability for a broader range of harms than the harms for which that actor would be liable if only acting negligently." Restatement (Third) of Torts § 33(b), at 562. However, "an actor who intentionally or recklessly causes harm is not subject to liability for harm the risk of which was not increased by the actor's intentional or reckless conduct." *Id.* § 33(c), at 562.

We have not extended the Restatement (Third) of Tort's scope-of-liability analysis to criminal cases, but we have referred to its factual-causation standard. In *Tribble*, we stated, "The conduct of a defendant is a 'factual cause of harm when the harm would not have occurred absent

the conduct.' " 790 N.W.2d at 127 (quoting Restatement (Third) of Torts § 26, at 346). We limited our analysis in that felony murder case to factual causation. *Id.* at 127 n.1 ("The nature of the argument presented by Tribble in this case does not require us to consider the element of causation beyond a factual-cause analysis."). We applied the Restatement (Third) of Torts factual-causation but-for test in several subsequent criminal cases. *See State v. Tyler*, 873 N.W.2d 741, 747–50 (Iowa 2016) (reviewing such cases). We expressly left open whether we would replace the legal or proximate cause analysis in criminal cases with the scope-of-liability approach of the Restatement (Third) of Torts. *See id.* at 750 ("[W]e need not resolve that question today either.").

Iowa Code chapter 910 expressly relies on civil liability principles to determine restitution for a crime victim's pecuniary damages. Iowa Code § 910.1(3); *see also id.* § 910.8 (providing for setoffs for recoveries in civil action and criminal restitution proceedings). Accordingly, we now hold that the Restatement (Third) of Torts' risk standard for scope of liability applies in criminal restitution determinations. Against this backdrop, we turn to the issues presented in Roache's appeal.

**B. Factual Causation.** Roache claims his actions were not the factual cause of the $1900 fine. Roache concedes that his theft resulted in Hagedon's loss of the study guide, but contends the guide's value is negligible. Roache argues that there was no substantial evidence supporting the district court's finding that his actions were the factual cause of Hagedon's $1900 fine. Instead, Roache asserts the $1900 fine resulted from Hagedon's voluntary execution of the agreement with Northland after the theft. We readily conclude that Roache's actions were the factual cause of Hagedon's loss of the study guide. But for the theft,

the study guide would not have been lost, and Hagedon would not have faced liability to Northland for his failure to return the guide.

**C. Scope of Liability.** Roache also argues that Hagedon's $1900 fine after the theft falls outside the scope of liability. The State argues that Roache's act of stealing an expensive item in a backpack falls within the scope of liability for the theft and that he is therefore liable for the $1900 fine. The district court did not expressly address scope of liability in its restitution order. The court of appeals, however, determined that "Hagedon's loss was also within the scope of liability of Roache's action, as it was likely—and presumably Roache's hope—that the backpack he stole from Hagedon's car would contain valuable items." We agree that a stolen item's reasonable value falls within the scope of liability for theft. But, here, we must consider the role of a third party, Northland, that imposed the $1900 fine on Hagedon.

"Restitution damages are to be determined . . . in the same manner as in a civil case." *Watts*, 587 N.W.2d at 751–52. Thus, we consider whether Hagedon could recover the $1900 fine from Roache in a civil action. Roache's theft was an intentional act. The intentional tort of conversion is the civil counterpart to theft. *State v. Taylor*, 506 N.W.2d 767, 768 (Iowa 1993). Liability for intentional torts extends to a broader range of harms than merely negligent conduct. Restatement (Third) of Torts § 33(b), at 562. Roache's theft of the study guide exposed Hagedon to liability to Northland for loss of the guide. The victim of a tort may seek indemnity from the tortfeasor for the victim's liability to a third party resulting from the tort. *See, e.g., Peters v. Lyons*, 168 N.W.2d 759, 770–71 (Iowa 1969) (allowing recovery under indemnity theory for liability to third party). *See generally Wells Dairy, Inc. v. Am. Indus. Refrigeration,*

*Inc.*, 762 N.W.2d 463, 471–72 (Iowa 2009) (discussing equitable indemnity).

Essentially, the State on behalf of Hagedon, as the crime victim, seeks indemnity from the criminal/tortfeasor Roache for Hagedon's liability to Northland resulting from the theft of the study guide. But liability in what amount? Could Northland enforce its $1900 fine and collect it in full from Hagedon? The State as the party seeking indemnity in Hagedon's shoes "has the burden of proving [it] is entitled to the relief requested." *In re Marriage of Ginsberg*, 750 N.W.2d 520, 522 (Iowa 2008); *see also Bonstetter*, 637 N.W.2d at 170 (indicating state bears burden of proving amount of criminal restitution). We look to general principles of the law of damages to determine whether the State met its burden of proof as to restitution for the $1900 fine.

**D. Roache's Avoidable Consequences Defense.** Roache argues that Hagedon, by acquiescing to an excessive $1900 fine, failed to protect his own interests and minimize his damages after the theft and that the doctrine of avoidable consequences would bar him from recovering the fine in a civil action. Under the doctrine of avoidable consequences,

> a party cannot recover damages that result from consequences that a party could reasonably have avoided. The doctrine comes into play after a legal wrong occurs, but while some damage may still be averted, and bars recovery only for such damages. The doctrine is akin to mitigation of damages in contract actions when plaintiffs must attempt to reduce damages after an injury occurs.

*Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 291 (Iowa 1994) (citations omitted).

The doctrine of avoidable consequences is a comparative fault principle. *See, e.g., Coker v. Abell-Howe Co.*, 491 N.W.2d 143, 150 (Iowa 1992) ("We hold that the Iowa legislature adopted the avoidable consequences doctrine as an element of fault in Iowa Code section 668.1.").

"Tort theories dealing with fraud and intentional torts are not included in the definition of 'fault' to which chapter 668[, Iowa's comparative fault statute,] applies." *State v. Wagner*, 484 N.W.2d 212, 216 (Iowa Ct. App. 1992) (addressing restitution for kidnapping and insurrection during a prison riot). An intentional wrongdoer cannot raise the victim's comparative fault as a defense. *Id.*; *see also Tratchel v. Essex Grp., Inc.*, 452 N.W.2d 171, 180–81 (Iowa 1990), *abrogated on other grounds by Comes v. Microsoft Corp.*, 775 N.W.2d 302, 309–10 (Iowa 2009); *see also Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 117 (Iowa 2011) ("*Tratchel* remains good law for the proposition that an intentional tortfeasor cannot reduce his liability by raising a defense of the victim's comparative negligence."). Further, in *Wagner*, the court of appeals "determine[d] comparative fault principles do not apply to restitution for criminal acts under Iowa Code chapter 910." 484 N.W.2d at 216. We agree as to intentional criminal acts. Accordingly, the avoidable consequences doctrine is inapplicable here.

**E. Evidentiary Support for the $1900 Restitution Award.** To prove the $1900 amount of restitution for the stolen study guide, the State presented Hagedon's testimony, as well as the agreements Hagedon signed and the accompanying documents. Roache argues Hagedon has no legal duty to pay the fine and has suffered no injury. For that reason, Roache argues there is not substantial evidence to support the $1900 restitution award.

1. *The State's burden to prove restitution.* The restitution statute "allows recovery of 'all damages' . . . which the state can show by a preponderance of the evidence." *Bonstetter*, 637 N.W.2d at 168 (quoting *Ihde*, 532 N.W.2d at 829). A crime victim is entitled to recover in restitution the amount that "a victim could recover against the offender in

a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium." Iowa Code § 910.1(3).

When reviewing a restitution award, we must "determine whether the court's findings lack substantial evidentiary support." *Hagen*, 840 N.W.2d at 144 (quoting *Bonstetter*, 637 N.W.2d at 165). We will not find the restitution order is "excessive if it bears a reasonable relationship to the damage caused." *Bonstetter*, 637 N.W.2d at 168. We must determine whether substantial evidence supports the $1900 restitution award.

2. *Restitution for crime victim's obligations to a third party.* The State on behalf of Hagedon is seeking indemnification from Roache for the fine Northland imposed for the stolen study guide. Our cases permit the party seeking indemnity (the indemnitee) to recover from the wrongdoer (the indemnitor) the amount the indemnitee "has been compelled to pay as a natural consequence of the [indemnitor]'s negligence or other wrong." *In re Marriage of Ginsberg*, 750 N.W.2d at 522–23 (alteration in original) (quoting *Howell v. River Prods. Co.*, 379 N.W.2d 919, 921 (Iowa 1986)); *see also Iowa Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 156–57 (Iowa 2001) (describing indemnity and subrogation as forms of restitution to recover what one "has been compelled to pay" and recognizing the party seeking restitution must first pay the obligation (quoting *Am. Sur. Co. of N.Y. v. Bethlehem Nat'l Bank of Bethlehem*, 314 U.S. 314, 317, 62 S. Ct. 226, 228 (1941))).[3] Hagedon has not been "compelled to pay" any part of the $1900 fine. He simply acknowledged

---

[3]Parties may nevertheless file pleadings asserting claims for restitution before paying the amount at issue, with the court imposing restrictions on enforcement until the claim is paid. *See Unisys Corp.*, 637 N.W.2d at 157.

Northland's outstanding balance for his "fine" in that amount without expressly agreeing to pay it.

In *Iowa, Chicago & Eastern Railroad Corp. v. Pay Load, Inc.*, the United States District Court for the Northern District of Iowa addressed Iowa tort damages in a somewhat analogous situation. 348 F. Supp. 2d 1045 (N.D. Iowa 2004). A truck driver employed by the defendant failed to stop at a grade crossing, resulting in a train–truck collision that destroyed a locomotive the plaintiff had been leasing from a third party. *Id.* at 1048–49. Applying Restatement (Second) of Torts section 927, and comment *m* thereto,[4] the federal district court noted,

> Here, under the terms of the lease, IC & E is obligated, upon demand by First Union, in the event of loss or destruction of a locomotive, to pay First Union a pre-determined amount as set forth in a Stipulated Loss Schedule which is attached to the lease. Such a loss appears to fall squarely within the framework of comment m. Moreover, such a result is in keeping with the principles underlying the allowance of damages in tort actions.

*Iowa, Chi. & E. R.R.*, 348 F. Supp. 2d at 1053; Restatement (Second) of Torts § 927 cmt. *m*, at 542 (Am. Law Inst. 1979). No party challenged this liquidated-damages provision as an unenforceable penalty. "[T]he court conclude[d] that in order to permit IC & E full compensation it will be entitled to seek to recover the amount set forth in the lease's Stipulated Loss Schedule." *Iowa, Chi. & E. R.R.*, 348 F. Supp. 2d at 1053. Importantly, however, the court conditioned recovery on proof the plaintiff will actually be required to pay the amount stipulated in the lease. *Id.* ("[I]f

---

[4]Comment *m* states in part,

> *m. Further loss.* The person entitled to the value of a thing taken or destroyed by a tortfeasor is entitled to recover for any further loss suffered by him as the result of the deprivation, subject to the rules stated in §§ 912 and 917 as to certainty and causation.

Restatement (Second) of Torts § 927 cmt. *m*, at 542.

the evidence at trial establishes that IC & E will not be required to pay First Union the amount set forth in the lease's Stipulated Loss Schedule, but instead a lesser amount, IC & E will not be permitted to seek such damages."). Here, the State failed to prove Hagedon actually will be "compelled to pay" Northland's $1900 fine and failed to rebut Roache's argument that the fine is an unenforceable penalty.

3. *Northland's unpaid fine alone is insufficient.* The amount actually paid because of the wrongdoing is evidence of the amount recoverable through indemnification, particularly when the amount paid is fixed through an arm's-length transaction. *See In re Marriage of Ginsberg*, 750 N.W.2d at 522–23. The amount *billed* is not conclusive in tort cases, and fact finders consider whether the plaintiff has *paid* the amount charged as a factor in determining whether that amount was reasonable. *See Pexa v. Auto Owners Ins.*, 686 N.W.2d 150, 156 (Iowa 2004) ("The amount charged, standing alone, is not evidence of the reasonable and fair value of the services rendered. The billed amount is relevant only if that figure was paid or an expert witness has testified to the reasonableness of the charges." (Citations omitted.)); *see also Stanley v. State*, 197 N.W.2d 599, 606–07 (Iowa 1972) ("The amount charged, without payment, is not evidence of the propriety of the charges."). Indeed, it is speculative whether Northland will attempt to collect any amount from Hagedon beyond whatever Roache pays in court-ordered restitution. And no expert or lay witness testified that the $1900 amount was reasonable.

*Bonstetter* is instructive. John Bonstetter was convicted of embezzling over $422,000 from his employer. 637 N.W.2d at 164. In the restitution hearing, the state submitted a bill in the amount of $19,763 for the cost of an audit, and the sentencing court included that amount in the restitution award. *Id.* Bonstetter challenged the audit award on appeal,

and we reversed, concluding the auditor's bill alone (without proof the victim paid it) was insufficient to meet the state's burden of proof that the cost of this audit was reasonable and necessary. *Id.* at 169–70 (holding "the inclusion of the costs of the audit as an item of damage was not supported by substantial evidence").

The State argues that Hagedon has suffered $1900 in damages. The record shows, however, that Hagedon has not paid the $1900 fine and that Northland to date has not attempted to collect the fine from him. Hagedon testified Northland was "waiting for what we would hear from restitution." When the court asked whether Hagedon talked to Northland about waiving the fine, Hagedon stated, "[A]ny restitution that came out of this, they would still like to get. I haven't spoke[n] with them since probably the day of the class." Hagedon did not know what would happen if the court did not include the fine in the restitution award or if he failed to pay the fine. In any event, Hagedon completed Northland's training course and obtained his CDL despite his $1900 outstanding balance with Northland for the loss of the study guide. We conclude that Northland's unpaid fine is akin to the unpaid billing invoice in *Bonstetter* and is insufficient without more to support the restitution award.

4. *Methods of calculating damages.* We next consider whether other evidence supports the restitution award. "We have said that tort damages are not limited by the reasonable contemplations of the parties. Instead, the amount of direct injury is compensated, whether its extent was contemplated or not." *R.E.T. Corp. v. Frank Paxton Co.*, 329 N.W.2d 416, 420 (Iowa 1983). "In civil cases, we will affirm a damage award if it is within a reasonable range of the evidence." *Watts*, 587 N.W.2d at 752.

> [T]here is a recognized distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. One cannot recover if it is speculative and

uncertain as to whether the damages claimed have actually been sustained, but if the uncertainty lies only in the amount of damages, recovery may be had if there is proof of reasonable basis from which the amount may be inferred.

*Id.* (quoting *Natkin & Co. v. R.F. Ball Constr. Co.*, 255 Iowa 1156, 1167, 123 N.W.2d 415, 422 (1963)). With regard to reviewing damage awards, we stated,

Although it may not be possible to value the property with absolute certainty as of a particular date, an award of damages may still stand so long as the figure has a reasonable basis and is not speculative, possible or imaginary, particularly where the conduct of the wrongdoers has rendered it difficult to ascertain the damages suffered with the precision otherwise possible.

*Id.* (quoting 22 Am. Jur. 2d *Damages* § 430, at 515–16 (1988)).

i. *Replacement cost or actual value.* One measure of damages is the replacement cost of the study guide. "The general rule in Iowa for repairs or for replacement [of property] is the fair and reasonable cost of replacement or repair, but not to exceed the value of the property immediately prior to the loss or damage." *State v. Urbanek*, 177 N.W.2d 14, 16 (Iowa 1970).

Roache argues that the $1900 fine has no reasonable relationship to the actual replacement cost of the study guide. The study guide was soft covered, approximately six inches wide by eight or ten inches long, and between a quarter- and half-inch thick. The State presented no evidence regarding the replacement cost of the study guide. The district court "presume[d] that $1,900 far exceeds the actual cost to print the study guide." Hagedon testified without objection at the restitution hearing that his insurance company determined the study guide had no value and that $1900 was the amount of the fine, but "not the actual value of the book." The State did not show the guide's value exceeds the cost of

the course tuition that included use of the guide—yet Northland admittedly imposed a fine of four times the cost of tuition.

The study guide's contents may well have value as intellectual property, but the State presented no expert or lay testimony to prove such value. No copyright infringement, trade secret, or business competition injury was shown to justify the $1900 amount.

ii. *Hagedon's damages for breach of contract.* The State argues the $1900 restitution award is supported by the evidence showing Hagedon's liability for breach of Northland's contract as liquidated damages for loss of the study guide. The parties agree on the applicable general principles of contract law but disagree as to the result when those principles are applied to this evidentiary record.

> Damages for breach of contract . . . are limited to "those injuries which may reasonably be considered as arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of the parties, *at the time of contracting*, as a probable result of the breach."

*R.E.T. Corp.*, 329 N.W.2d at 420 (emphasis added) (quoting *Meyer v. Nottger*, 241 N.W.2d 911, 920 (Iowa 1976)).

When the amount of damages resulting from a breach of contract is uncertain,

> [d]amages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

*Rohlin Constr. Co. v. City of Hinton*, 476 N.W.2d 78, 80 (Iowa 1991) (quoting Restatement (Second) of Contracts § 356(1), at 157 (Am. Law Inst. 1981)).

We consider two factors in determining whether a liquidated-damages provision constitutes an unenforceable penalty: (1) "the

anticipated or actual loss caused by the breach" and (2) "the difficulty of proof of loss." *Id.* (quoting Restatement (Second) of Contracts § 356(1) cmt. *b*, at 157–58); *see also City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 85 (Iowa 2004) (same). "The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty, the easier it is to show that the amount fixed is reasonable." *Rohlin Constr. Co.*, 476 N.W.2d at 80 (quoting Restatement (Second) of Contracts § 356(1) cmt. *b*, at 158).

The State argues that the contract documents support the $1900 restitution award based on Hagedon's purported contractual liability to Northland in that amount. Roache responds that the amount of the fine is an unenforceable penalty rather than a valid contractual liquidated-damages provision.

We agree with the State that the uncertain value of the study guide permits its loss to be set through a liquidated-damages provision in Northland's contract with its students such as Hagedon. But Roache argues Hagedon never agreed to the $1900 amount when he signed his contract for the training course. *See Golden Sun Feeds, Inc. v. Clark*, 258 Iowa 678, 683, 140 N.W.2d 158, 161 (1966) ("The phrase 'liquidated damages' means a sum stipulated and agreed upon by the parties, *at the time of entering into a contract*, as being payable as compensation for injuries in the event of a breach." (emphasis added) (quoting 22 Am. Jur. 2d *Damages* § 212, at 297 (1965))). The State responds that Hagedon's initial contract made clear he would be assessed a costly fine in an unspecified amount for loss of the study guide and that after the theft, he signed a second Northland document acknowledging the $1900 amount of the fine. In our view, this paper trail remains inadequate to establish Hagedon's legal obligation to pay Northland that amount for the

loss of the study guide because an excessive amount can be an unenforceable penalty.

The State failed to meet its burden to prove $1900 is reasonably related to the anticipated damages for Hagedon's breach of the Northland contract. As noted, the State offered no testimony to support an intellectual property value for the guide or its replacement cost. Northland's own description of the $1900 amount as a "fine" supports the conclusion that it is an unenforceable penalty rather than a valid liquidated-damages amount. Northland could not compel Hagedon to pay such a penalty in a civil action. For that reason, Hagedon would be unable to seek indemnification from Roache in that amount in a civil action for breach of contract.

iii. *Punitive damages.* Roache argues the $1900 fine constitutes an award of punitive damages prohibited by the governing statute. *See* Iowa Code § 910.1(3) (" '*Pecuniary damages*' means all damages . . . except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium."). Punitive damages are distinct from pecuniary or actual damages. "Punitive damages exist to punish a defendant who has 'intentionally violated another's rights.' " *Papillon v. Jones*, 892 N.W.2d 763, 771 (Iowa 2017) (quoting *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 686 (Iowa 2013)). Punitive damages also serve to deter similar misconduct by the defendant and others in the future. *Id.* Northland's documents show it threatens students with a "costly fine" to deter students from retaining the study guides and punish those who fail to return them. Given the lack of any evidence of the study guide's actual value, we conclude Northland's $1900 fine was punitive. For that additional reason, the $1900 fine must be excluded from the restitution award. *See* Iowa Code § 910.1(3).

Sentencing courts should not rubber-stamp victim restitution claims. The sentencing court in this case clearly explained its reasoning for awarding restitution, as did the court of appeals in affirming the $1900 award, which facilitated our review. Nevertheless, we reach a different conclusion. In our view, the State failed to meet its burden of proof, and the amount of pecuniary damages awarded in restitution for this study guide is unsupported by substantial evidence. Perhaps Northland could have enforced a smaller amount in a valid liquidated-damages provision with its students. Northland's assessment of the $1900 fine for its paper study guide invokes the adage, "pigs get fat, hogs get slaughtered."

**IV. Disposition.**

For these reasons, we vacate the decision of the court of appeals and reverse the district court's restitution order as to the $1900 award for the study guide. We affirm the restitution judgment as modified.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

All justices concur except Mansfield, J., who dissents.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. I believe the court is looking at the wrong law, thereby leading it to the wrong result.

The restitution statute authorizes "payment of pecuniary damages to a victim." Iowa Code § 910.1(4) (2016). "Pecuniary damages" means

> all damages to the extent not paid by an insurer on an insurance claim by the victim, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium.

*Id.* § 910.1(3). So the relevant question is what damages could Jordan Hagedon, the victim, recover from Terran Roache, the defendant, in a civil action.

As the court ultimately recognizes, this is an issue of damages, not scope of liability. The loss of the CDL study guide was certainly within the scope of liability; Roache took the backpack that contained this study guide. The Third Restatement has not yet addressed the subject of damages for intentional torts to property. *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm Introduction, at 1–2 (Am. Law Inst. 2010) ("Determining the recoverable damages and their amount is beyond the scope of this Restatement and remains within the Second Restatement's coverage until future installments of the Restatement Third, Torts."). Hence, we revert to prior law.

The Second Restatement provides that damages for conversion of a chattel include the value of the chattel and "the amount of any further pecuniary loss of which the deprivation has been a legal cause." Restatement (Second) of Torts § 927, at 534 (Am. Law Inst. 1979). In *State v. Taylor*, which involved court-ordered restitution in a theft case, we quoted and relied on this provision. *See* 506 N.W.2d 767, 768, 769 (Iowa

1993). There we concluded that theft was analogous to conversion, and the university's recoverable restitution in a theft case included not only the uninsured loss but also $14,425 for the audit the university had to perform. *Id.* at 768–69.

So the only issue for me is whether Hagedon in fact has to pay the fine. The record leaves some doubt.

It is notable that Hagedon agreed in writing at the outset to pay a fine if the copyrighted study guide was not returned. After the theft occurred, and before it had been solved, Hagedon signed a further agreement to pay $1900 for the loss of the study guide. I give weight to this agreement because it was not developed for purposes of the restitution hearing but was in fact a binding, arm's length commitment by Hagedon to pay $1900.

On the other hand, Hagedon's testimony at the restitution hearing was inconclusive. He said he was told Northland has charged the $1900 in the past, but he did not know if he would actually be charged the $1900 if he was unable to get it included in the restitution award.

The district court found,

> The "damage" to the victim for failing to return the study guide came to $1,900. But for [Roache's] criminal actions, [Hagedon] would not have been assessed that "fine." The Court would presume that $1,900 far exceeds the actual cost to print the study guide, but the actual cost of the study guide does not reimburse [Hagedon] for the loss he sustained as a result of [Roache's] actions. The amount claimed for damages for Jordan Hagedon is approved in the amount of $1,900.00 for the study guide and $500.00 for his insurance deductible.

The majority correctly states that restitution proceedings are reviewed for correction of errors at law. *See State v. Hagen*, 840 N.W.2d 140, 144 (Iowa 2013). If substantial evidence supports the district court's factual finding, we are bound to affirm it. *See id.* Because substantial

evidence supports the fact-finding here, I would affirm. Although the evidence would probably also support a contrary finding that Hagedon is not actually obligated to pay the $1900, it is not our job to reweigh the evidence.

I do not think liquidated-damages caselaw has much relevance here. This isn't a breach of contract case between Hagedon and Northland CDL Training & Licensing, subject to a breach-of-contract measure of damages. It's a hypothetical tort claim by Hagedon against Roache. Usually tort defendants must compensate victims as they find them.

More relevant, in my view, is a decision of the United States District Court for the Northern District of Iowa addressing tort damages in a somewhat analogous situation. In *Iowa, Chicago & Eastern Railroad Corp. v. Pay Load, Inc.*, a truck driver employed by the defendant failed to stop at a grade crossing, resulting in a train–truck collision that totally destroyed a locomotive the plaintiff had been leasing from a third party. 348 F. Supp. 2d 1045, 1048–49 (N.D. Iowa 2004). Applying Restatement (Second) of Torts § 927, and comment *m* thereto,[5] the federal district court noted,

> Here, under the terms of the lease, IC & E is obligated, upon demand by First Union, in the event of loss or destruction of a locomotive, to pay First Union a pre-determined amount as set forth in a Stipulated Loss Schedule which is attached to the lease. Such a loss appears to fall squarely within the framework of comment m. Moreover, such a result is in keeping with the principles underlying the allowance of damages in tort actions.

---

[5]Comment *m* states in part,

> *m. Further loss.* The person entitled to the value of a thing taken or destroyed by a tortfeasor is entitled to recover for any further loss suffered by him as the result of the deprivation, subject to the rules stated in §§ 912 and 917 as to certainty and causation.

Restatement (Second) of Torts § 927 cmt. *m*, at 542.

*Id.* at 1053. The court went on to conclude that "in order to permit IC & E full compensation it will be entitled to seek to recover the amount set forth in the lease's Stipulated Loss Schedule." *Id.* However, "if the evidence at trial establishes that IC & E will not be required to pay First Union the amount set forth in the lease's Stipulated Loss Schedule, but instead a lesser amount, IC & E will not be permitted to seek such damages." *Id.*

This simple and straightforward analysis should apply with equal force here. If Hagedon will have to pay the $1900, it should be awarded as restitution; if not, it shouldn't. Substantial evidence supports the district court finding that Hagedon actually owes the $1900.

Rather than giving us a clear and precise explanation for why it is overturning the district court's award of restitution, the majority offers a series of partial explanations. I find them unpersuasive.

For example, the majority states that Roache should not have to indemnify Hagedon for the $1900 because Hagedon "simply acknowledged" this amount "without expressly agreeing to pay it." I do not follow this distinction. After the theft, Hagedon agreed in writing that he "will be charged" the $1900. To me, that is an agreement to pay it. Again, notwithstanding the text of the written agreement, Hagedon could not confirm at the hearing that he actually would be charged the $1900 if it wasn't included in the restitution award. Still, there was enough in the record to sustain the district court's finding that an actual loss of $1900 would be incurred by Hagedon.

Next, consider the duo of cases cited by the majority relating to the recovery of *medical expenses* in *personal injury* cases. Undeniably, our law limits injured plaintiffs to recovery of "reasonable and necessary" costs of medical care. *Pexa v. Auto Owners Ins.,* 686 N.W.2d 150, 156 (Iowa

2004); *see also Stanley v. State*, 197 N.W.2d 599, 606 (Iowa 1972). We have a long-standing corollary rule that in proving the reasonable value of medical services, the amount billed is relevant only if it has been paid or if an expert witness testified to its reasonableness. *See Pexa*, 686 N.W.2d at 156; *Stanley*, 197 N.W.2d at 606–07. Any patient who receives a bill nowadays from a health care provider would understand why we have that rule and would agree that it makes sense. But it is a rule for medical expenses in personal injury cases, not for every category of tort damages. The court's implication to the contrary is incorrect. *Compare* Restatement (Second) of Torts § 927, at 534 (relating to damages for conversion or destruction of a thing), *with id.* § 924, at 523 (relating to personal injury damages and indicating that reasonable medical expenses are recoverable).

Nor is this a case like *State v. Bonstetter*, 637 N.W.2d 161 (Iowa 2001). The issue there, as in *Taylor*, was whether the cost of an audit could be recovered. *Id.* at 168. But no evidence was presented except the $19,763 auditor's bill. *Id.* at 169–70. We concluded,

> [P]resentation to the court of the bill alone is not enough to prove the costs of the audit are necessary, fair, and reasonable. Some other proof is necessary before we can conclude the audit was a reasonable, fair, and necessary element of damage.

*Id.* at 170.

I think it is self-evident that a $19,763 audit bill as a restitution item in an embezzlement case is not self-explanatory and requires something more than just the bill. Notably, we said in *Bonstetter* that testimony from a witness that the audit fees were "necessary, fair, and reasonable" was *not* required; all that was needed was "evidence to support the conclusion the audit is necessary, fair, and reasonable." *Id.* at 169. Here, by contrast,

the State submitted more than a bill: it presented two separate contracts plus testimony from Hagedon.

Most of all, as I've already noted, the majority relies on liquidated damages law. But even if this body of contract law were relevant, I would disagree with the majority's liquidated-damages analysis.

To begin with, the $1900 are *not* liquidated damages. This amount was agreed upon after the breach occurred, not before. *Cf.* Restatement (Second) of Contracts § 356 cmt. *a*, at 157 (Am. Law Inst. 1981) (explaining that a liquidated-damages clause "effectively provide[s] in advance the damages that are to be payable in the event breach"). "In a contract of accord for breach of a previously broken contract, the parties may agree on what terms of settlement they will accept . . ., however unfavorable the accord may be to the party in default." 24 Richard A. Lord, *Williston on Contracts* § 65:5 (4th ed.), Westlaw (database updated Nov. 2018).

Additionally, even if the $1900 could be viewed as liquidated damages, the majority misallocates the burden of proof. Under our caselaw, stipulated-damages clauses are presumptively valid. *See Gordon v. Pfab*, 246 N.W.2d 283, 288 (Iowa 1976) ("A party who contends that a liquidation clause is in reality a penalty has the burden to plead that fact and prove the actual damages in the trial court."); *see also Heaberlin v. Heaberlin*, 255 Iowa 403, 409, 122 N.W.2d 841, 844 (1963) (citing cases). It is not the proponent's burden to prove validity of the clause, but the burden of the party contesting the clause to prove its invalidity.

Nor is the issue the "value" of the study guide. Rather, the issue is the potential damage that would befall Northland if its copyrighted, proprietary study guide began to circulate, where others could copy it for their purposes such as to offer their own CDL course. How much is that damage, and how difficult is it to estimate? *See* Restatement (Second) of

Contracts § 356 cmt. *b*, at 158 ("The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty, the easier it is to show that the amount fixed is reasonable.").

Lastly, whether the $1900 is denominated a fine or liquidated damages in the parties' agreements has little significance. *See id.* cmt. *c*, at 159 ("Neither the parties' actual intention as to its validity nor their characterization of the term as one for liquidated damages or a penalty is significant in determining whether the term is valid.").

For the foregoing reasons, I would uphold the district court's restitution award as supported by substantial evidence. In my view, the majority's criticisms are more aptly directed to our laws regarding fines, surcharges, and restitution *generally*, rather than to anything the district court or anyone else did in this particular case.