**IN THE COURT OF APPEALS OF IOWA**

No. 19-0770
Filed April 15, 2020

**IN THE INTEREST OF T.L.,**
**Minor Child,**

**T.L., Minor Child,**
         Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A juvenile appeals an order for restitution in a delinquency proceeding. **AFFIRMED IN PART AND REVERSED IN PART.**

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

A juvenile, T.L., pled guilty to operating a motor vehicle without the owner's consent and eluding. In its dispositional order, the court withheld delinquency adjudication and entered a consent decree. The victim, whose vehicle was totaled as a result of T.L.'s acts, submitted a victim impact statement requesting restitution in the following amounts: $1400 for the debt owed on the vehicle that was not covered by insurance;[1] $500 for the insurance deductible; $300 for a deposit on a new vehicle; $1191 to cover tax, title, and registration for a new vehicle; and $4609 to make up for payments he would not have had to make on a new vehicle in the future. Thereafter, the State moved to modify the dispositional order to include an order for restitution. The court entered an order for restitution in the amount of $1900, presumably attributable to the first two items of restitution requested. T.L. filed a motion for a restitution hearing, in which he objected to all amounts except the $500 for the insurance deductible.

At the ensuing restitution hearing, the victim testified he was also required to borrow a relative's car for roughly three weeks, although he was not required to pay the relative any compensation. The victim was unaware of whether his insurance company would have covered the cost of a rental car. The State requested the amount of restitution be modified to $2200, to additionally include the amount the victim was required to pay as a deposit on a new vehicle, $300. Later, the State alternatively suggested additional restitution in the amount of $300 would be appropriate to reflect the reasonable value of the victim's use of his

---

[1] The record indicates the victim owed $8900 on the vehicle, and the insurance company provided coverage for $7500 which it paid directly to the lender..

relative's vehicle. Even later, the State noted it was also requesting restitution in the amount of $1191 to cover tax, title, and registration for a new vehicle.

The court announced its restitution decision from the bench, concluding the amount of restitution would be $2500—$500 attributable to the insurance deductible, $1400 for the debt owed on the vehicle that was not covered by insurance, and $600 for the victim's loss of use of his vehicle for three weeks. The court entered its order for restitution on April 4, 2019, and ordered that the obligation be satisfied by June 4. Later that month, juvenile court services applied for revocation of T.L.'s consent decree. On May 9, the court entered an order revoking T.L.'s consent decree and adjudicating him delinquent. In a separate order, the court entered a restitution lien against T.L. for the amount still owed, $2000. T.L. appealed the same day.[2]

On appeal, T.L. claims the juvenile court misapplied the law in ordering restitution for the $1400 and $600 items and those items of restitution are unsupported by substantial evidence.[3] Appellate review of restitution orders is for correction of errors at law. *State v. Gross*, 935 N.W.2d 695, 698 (Iowa 2019). We

---

[2] T.L. had previously filed a notice of appeal following the entry of the order for restitution. The appeal was voluntarily dismissed on the ground that the matter was not appealable at that point in time because T.L. was still under the jurisdiction of the juvenile court due to the prior entry of a consent decree. The order for restitution was a modification of the dispositional order for a consent decree. A consent decree is akin to a deferred judgment in a criminal case, and "a consent decree is not a final order from which a party may appeal as of right." *In re J.J.A.*, 580 N.W.2d 731, 735 (Iowa 1998).

[3] The State contests error preservation as to the order for restitution in the amount of $600, arguing: "T.L. did not specifically object to the inclusion of these costs below and did not file a motion to reconsider when they were ordered." Because T.L. consistently maintained he should only be responsible for $500 in restitution, we conclude error was preserved.

will affirm unless "the court's findings lack substantial evidentiary support" or "the court has not properly applied the law." *Id.* (quoting *State v. Albright*, 925 N.W.2d 144, 158 (Iowa 2019)). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001) (quoting *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999)).

When the juvenile court enters a consent decree the court may suspend the proceedings and continue the case under certain terms and conditions established by the court, which may include an order for "restitution consisting of a monetary payment to the victim or a work assignment directly of value to the victim." Iowa Code § 232.46(1)(a)(4) (2018). The court may order the same when it enters a dispositional order finding a child to have committed a delinquent act. *Id.* § 232.52(2)(a)(2). "Restitution" is defined to include "payment of pecuniary damages to a victim." *Id.* § 910.1(4).

> "Pecuniary damages" means all damages to the extent not paid by an insurer on an insurance claim by the victim, which the victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium.

*Id.* § 910.1(3). "Any damages that are causally related to the criminal activities may be included in the restitution order." *Bonstetter*, 637 N.W.2d at 165. The State bears the burden of proof to establish the victim's entitlement to restitution by a preponderance of the evidence. *See State v. Roache*, 920 N.W.2d 93, 100 (Iowa 2018).

We first consider the value of the vehicle. Where, as here, a motor vehicle is totaled, "the measure of damages is the lost market value plus the reasonable

value of the use of the vehicle for the time reasonably required to obtain a replacement." *Hawkeye Motors, Inc. v. McDowell*, 541 N.W.2d 914, 916 (Iowa Ct. App. 1995) (quoting *Papenheim v. Lovell*, 530 N.W.2d 668, 671 (Iowa 1995)).

The record shows the victim owed $8900 on the vehicle, but his insurance carrier only provided coverage for $7500, thus leaving the victim responsible for $1400 ($500 of which was attributable to his deductible). There was no direct evidence as to the actual market value of the vehicle. The victim noted in his own testimony that his insurance carrier likely did not cover the amount of the loan because of the vehicle's high mileage. The State argues the value of the vehicle was at least $8900, noting the victim purchased it for $22,000 three years earlier and could have privately sold for at least $8900. But absolutely no evidence was presented concerning what the vehicle could have been sold for in its condition prior to T.L.'s conduct, and the insurance company's payment of $7500 plus the victim's obligation for a $500 deductible is evidence of the insurer's determination of a value of $8000.

The State goes on to argue the "court may properly consider how much a victim has been forced to pay a third party as a result of the defendant's criminal actions when determining the value of an item and the appropriate amount of restitution." It is true that "[r]estitution damages are to be determined . . . in the same manner as in a civil case." *Roache*, 920 N.W.2d at 102 (ellipsis in original) (quoting *State v. Watts*, 587 N.W.2d 750, 751–52 (Iowa 1989)). Indeed, operating a motor vehicle without an owner's consent and then totaling it is akin to the civil intentional tort of conversion. *See State v. Hollinrake*, 608 N.W.2d 806, 808 (2000) ("Conversion is the intentional exercise of control over property 'which so seriously

interferes with the right of another to control it that the actor may justly be required to pay . . . the full value of the chattel.'" (citation omitted)). And "[l]iability for intentional torts extends to a broader range of harms than merely negligent conduct," and tort victims "may seek indemnity from a tortfeasor for the victim's liability to a third party resulting from the tort." *Roache*, 920 N.W.2d at 103. But here, the victim's liability to his financer pre-existed the tort, it did not result from the tort. And the victim seemed to agree that his car was valued at a lower amount because of the vehicle's high mileage. The high mileage was not a result of T.L.'s tort. In addition, the balanced owed the financer is a function of interest rate and payment schedule, not value of the vehicle. At the end of the day, the victim is only entitled to the lost market value. *Hawkeye Motors*, 541 N.W.2d at 916. Upon the evidence presented, namely the insurance carrier's valuation of the vehicle, absent any other evidence that is relevant to determining the current market value of the vehicle, we find the court's valuation of the vehicle is not supported by substantial evidence. The evidence is only sufficient to support a valuation of $8000, of which $7500 was paid by the insurer.

We next consider the reasonable value of the use of the vehicle for the time reasonably required to obtain a replacement. On this point, T.L. argues, because the victim did not have to pay for a substitute vehicle, he is not entitled to loss-of-use damages or, alternatively, the amount ordered by the court was otherwise unsupported by substantial evidence. While there was evidence as to how much the victim used his relative's vehicle, there was no evidence concerning the value of that use, and no evidence he paid any amount for that use. There was also no evidence concerning the reasonable cost of a substitute. The State, with no basis

in the evidence, requested $300 as damages for loss of use. The court awarded $600—$200 per week. There was simply no evidence to support either figure. The State simply cites to a case which found damages in the neighborhood of $200 per week was reasonable for loss of use of a vehicle. *See Papenheim*, 668 N.W.2d at 673. But that determination was supported by evidence of rental rates for similar vehicles. *Id.* No such evidence was presented in this case. The record must disclose a reasonable basis from which the award of restitution can be inferred or approximated. *See Hawkeye Motors*, 541 N.W.2d at 918. Upon our review we find no basis in the evidence supporting the court's valuation of the loss of use of the vehicle. The court may not "arbitrarily fix an amount of damage for which no basis in the evidence exists." *Id.* at 917. That is exactly what happened here.

We find the evidence insufficient to support the court's order for restitution based on a market value of the vehicle in excess of $8000 or the reasonable value of the use of the vehicle for the time reasonably required to obtain a replacement. We affirm the restitution order as to the $500 for the victim's insurance deductible. We reverse the district court's restitution order as to the remaining $2000. *See Roache*, 920 N.W.2d at 108.

**AFFIRMED IN PART AND REVERSED IN PART.**